IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JACKIE L. SULLIVAN, Executrix of the Estate       :
of JOHN L. SULLIVAN, deceased, and widow in    :   Civil Action No.: _____
her own right,                                                        :
                                                                              :   Transferor Court:
                                          Plaintiff,               :   Court of Common Pleas
            v.                                                          :   Philadelphia County
                                                                              :
A.W. CHESTERTON, INC.;                                :   No. 1807-2918
ALLEN-BRADLEY COMPANY; AURORA        :
PUMP; ARMSTRONG INTERNATIONAL;
BATH IRON WORKS; BF GOODRICH
COMPANY; BUFFALO PUMPS, INC.;
CARRIER CORPORATION; CBS
CORPORATION, FORMERLY
WESTINGHOUSE ELECTRIC
CORPORATION; CERTAIN-TEED
CORPORATION; CLARK CONTROLLER
CO.; CLEAVER-BROOKS, INC., A DIVISION
OF AQUA-CHEM, INC.; COONEY
BROTHERS; CRANE CO.; EDWARDS
VALVE K/N/A FLOWSERVE; FLOWSERVE
(SUCCESSOR TO ANCHOR DARLING);
FOSTER WHEELER, LLC; GENERAL
DYNAMICS; GENERAL ELECTRIC
COMPANY; GOODYEAR CANADA;
GOODYEAR TIRE AND RUBBER CO.;
GARDNER DENVER; GARDNER DENVER
NASH; GOULDS PUMPS INC.; GREENE,
TWEED & CO., INC.; HERCULES; HOWDEN
NORTH AMERICA; HUNTINGTON INGALLS
INDUSTRIES; IMO INDUSTRIES, INC. F/K/A
DE LAVAL STEAM TURBINE COMPANY;
INGERSOLL-RAND & CO.; ITT BELL
GOSSET; ITT INC.; J.A. SEXAUER; JENKINS
PUMPS; JENKINS VALVES; JOHN CRANE,
INC.; JOHNSON CONTROLS SUCCESSOR
TO YORK; KUNKLE VALVE;
METROPOLITAN LIFE INSURANCE CO.;
MINNESOTA MINING AND
MANUFACTURING; NORTHERN PUMP;
NORTHROP GRUMMAN CORPORATION;
SELBY BATTERSBY AND COMPANY N/K/A
SB DECKING, INC.; SQUARE D COMPANY;

**VIAD CORPORATION F/K/A DIAL CORP.;
WARREN PUMPS LLC; WEIL MCLAIN, A
DIVISION OF THE MARLEY COMPANY, A
WHOLLY OWNED SUBSIDARY OF UNITED
DOMINION INDUSTRIES, INC.; WEIL PUMP**

**Defendants.**

### DEFENDANT HUNTINGTON INGALLS INCORPORATED'S
### <u>NOTICE OF REMOVAL</u>

PLEASE TAKE NOTICE that Defendant Huntington Ingalls Incorporated ("HIC"), incorrectly named in the Complaint as Huntington Ingalls Industries, by counsel, pursuant to 28 U.S.C. §§ 1442 and 1446, specially appears for the purpose of this removal and preserving all defenses, including specifically its objection to the exercise of personal jurisdiction by this Court, and hereby removes this civil action to the United States District Court for the Eastern District of Pennsylvania from the Court of Common Pleas in Philadelphia County, Pennsylvania. The specific grounds for removal are as follows:

**I.     <u>OVERVIEW</u>**

1.     On July 25, 2018, Plaintiff Jackie L. Sullivan ("Plaintiff") filed her Complaint against HIC and forty-seven other defendants, commencing the action entitled *Jackie L. Sullivan v. A.W. Chesterton, Inc., et al.* in the Court of Common Pleas in Philadelphia County, Pennsylvania, No. 1807-2918.  A true and correct copy of the Complaint is attached as **Exhibit A.**

2.     HIC received a copy of Plaintiff's Complaint via certified mail on July 30, 2018.

3.     HIC had not filed responsive pleadings in the Court of Common Pleas in Philadelphia County in advance of removing the case to this Court.

2

4.      Plaintiff alleges that her decedent, John L. Sullivan, was exposed to asbestos during his service in the Navy from October 1967 through January 1980. *See* Compl. ¶¶ 6-7, 11. Plaintiff further alleges that this exposure caused her Decedent to develop the lung cancer that allegedly led to his death. *Id.* ¶¶ 1, 13.

5.      As to HIC specifically, Plaintiffs allegations appear to pertain to two ships.[1]

6.      First, Plaintiff asserts that HIC's predecessors, including Newport News Shipbuilding in Newport News Virginia, "designed the USS John F. Kennedy [sic] to contain asbestos" and that "[e]xposure to asbestos on the ship caused the injuries herein." *Id.* ¶ 10(u).

7.      Second, Plaintiff asserts that for an unspecified period of time beginning on January 2, 1973, Decedent was assigned to the USS *Blakely*, DE-1072. *Id.* ¶ 6(d). Plaintiff further asserts that the USS *Blakely* was built at the Avondale Shipyard, located near Westwego, Louisiana, and was "intended to contain asbestos."[2] *Id.* ¶ 10(ii).

8.      HIC is, and was at all times relevant to the allegations in the Complaint, in the business of building ships. Throughout the company's history, HIC has conducted a substantial amount of work as a government contractor constructing, overhauling, and repairing United States Navy ("Navy") vessels, including at the Newport News Shipyard in Newport News, Virginia and the Avondale Shipyard in Avondale, Louisiana.

9.      Navy ships such as the USS *John F. Kennedy* and the USS *Blakely* were built pursuant to contracts between the Navy and HIC, according to the strict specifications of the

---

[1] For well over 100 years, and up to December 1, 2008, HIC was known as Newport News Shipbuilding and Drydock Company. Effective December 2, 2008, its name was changed to Northrop Grumman Shipbuilding, Inc. Shortly thereafter, the then-owner of the Avondale Shipyard in Avondale, Louisiana—Northrop Grumman Ship Systems, Inc.—merged into Northrop Grumman Shipbuilding, Inc. Effective April 14, 2011, Northrop Grumman Shipbuilding, Inc. changed its name to HIC, the name by which it is now known. In this Notice of Removal, the term "HIC" refers to HIC under its current and prior names.

[2] Plaintiff's Complaint incorrectly asserts her Avondale-related allegations against "Northrop." Compl. ¶ 10(ii).

3

Navy, and under the supervision of the Navy.  Decl. of Rear Admiral David P. Sargent, Jr. ¶¶ 17-37, attached as **Exhibit B**.

10.     With respect to their construction of Navy vessels, including the USS *John F. Kennedy* and the USS *Blakeley*, the Newport News Shipyard and the Avondale Shipyard essentially functioned as public Naval Shipyards. Ex. B, Sargent Decl. ¶ 35.

11.     Any asbestos used in the construction of the USS *John F. Kennedy* and the USS *Blakeley* was used pursuant to the direction of the Navy. *See* Ex. B, Sargent Decl. ¶¶ 17-37.

12.     During World War II and well into the 1960s, virtually all equipment that was to be installed in warships was procured by the Navy and provided to the building shipyard as government-furnished equipment. Ex. B, Sargent Decl. ¶ 24.  This includes equipment used in the construction of the USS *John F. Kennedy* and USS *Blakeley*.

13.     The Navy's contracts with HIC specified in great detail all the materials, processes and testing that were required by invoking numerous Navy or Military Specifications and Standards, and the work was overseen continuously by the onsite Navy Supervisor of Shipbuilding (SUPSHIP) commander and staff.  Ex. B, Sargent Decl. ¶¶ 27, 28, 35.  These contracts were binding on HIC and required the use of specific products, including at times asbestos-containing products, in the construction of Navy ships and submarines  *See* Ex. B, Sargent Decl. ¶¶ 23-32.   The ships and submarines conformed to and complied with the Government's specifications.   HIC could not vary from those detailed specifications and standards in any way without the express approval of the Navy and a modification to the contract documenting that approved change. *See* Ex. B, Sargent Decl. ¶¶ 23-32.

14.     As a result, HIC has colorable federal defenses to Plaintiff's claims under *Boyle v. United Technologies Corp.,* 487 U.S. 500 (1988), *Yearsley v. WA Ross Construction Co.*, 309

4

U.S. 18 (1940), *Feres v. U.S.*, 340 U.S. 138 (1950), and the "combatant activities exception" of the Federal Tort Claims Act. This case is thus removable on the grounds of federal officer removal jurisdiction pursuant to 28 U.S.C. § 1442(a)(1).

15.     This Notice of Removal is timely. The 30-day removal period prescribed by 28 U.S.C. § 1446(b) begins to run when a defendant is served with the initial pleading setting forth the claim for relief from which it may first be ascertained that the case is removable. 28 U.S.C. § 1446(b)(1). HIC received Plaintiff's Complaint via certified mail on July 30, 2018. The Complaint put HIC on notice that Plaintiff's claims in this action involve alleged exposure to asbestos aboard Navy ships. Thus, this Notice of Removal, filed within 30 days of service, is timely.

16.     This Notice of Removal and all exhibits hereto are being filed in the United States District Court for the district and division in which the state court action is pending. *See* 28 U.S.C. § 1446(a).

17.     Pursuant to § 1446(a), HIC has filed herewith a copy of all process, pleadings, and orders served upon it in the case to date.

18.     HIC is not required to notify, or obtain the consent of, any other defendant in this action to remove the entire case under § 1442(a)(1). *See* 28 U.S.C. § 1446(b)(2)(A) (requiring all defendants to consent only when "a civil action is removed solely under section 1441(a)"); *see Ely Valley Mines, Inc. v. Hartford Acc. & Indem. Co.*, 644 F.2d 1310, 1315 (9th Cir. 1981); *see also Huntingdon Valley Club Condominium Ass'n v. Penn. Housing Finance Agency*, No. 04-cv-4770, 2005 WL 44524, at *2 (E.D. Pa. Jan. 10, 2005).

19.     Notice of removal has been, or will be, filed with the Court of Common Pleas in Philadelphia County, Pennsylvania and provided to all adverse parties pursuant to 28 U.S.C. § 1446(d).

## II.     JURISDICTION AND VENUE

20.     As a preliminary matter, HIC is not subject to personal jurisdiction in Pennsylvania with respect to Plaintiff's claims.  HIC will timely file a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2).

21.     The Court's subject matter jurisdiction is based on 28 U.S.C. §§ 1331 and 1442(a)(1) in that it is a civil action in which Plaintiff's alleged right to relief necessarily depends on the resolution of a substantial question of federal law.

22.     Venue is proper in the Eastern District of Pennsylvania because the state court action was filed in the Court of Common Pleas in Philadelphia County, Pennsylvania.  28 U.S.C. §§ 1442(a).

## III.     GROUNDS FOR REMOVAL

23.     Removal is proper under 28 U.S.C. § 1442(a)(1) of any state court action against or directed to "[t]he United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof … for or relating to any act under color of such office…."  28 U.S.C. §1442(a)(1).

24.     "This statute overcomes the well-pleaded complaint rule by providing a method to remove a case brought in state court against a federal officer, or any other person acting under a federal officer, despite the absence of a federal cause of action." *Nesbiet v. Gen. Elec. Co.*, 399 F. Supp. 2d 205, 210 (S.D.N.Y. 2005) (citing *Jefferson County v. Acker*, 527 U.S. 423, 431 (1999)).  This statute "enables the defendant to have the validity of his immunity defense adjudicated, in a federal forum." *Arizona v. Manypenny*, 451 U.S. 232, 242 (1981).

6

25.     The Supreme Court has held that "the right of removal is absolute for conduct performed under color of federal office, and has insisted that the policy favoring removal 'should not be frustrated by a narrow, grudging interpretation of § 1442(a)(1).'" *Id.* at 242 (quoting *Willingham v. Morgan,* 395 U.S. 402, 407 (1969)).

26.     Removal pursuant to 28 U.S.C. § 1442(a)(1) is appropriate where the moving party (a) is a "person" within the meaning of the statute, (b) can show that it acted under the direction of a federal officer, (c) can demonstrate a "connection" or "association" between the plaintiff's claims and the acts it performed under color of federal office,[3] and (d) can raise a colorable federal defense to the plaintiff's claims. *See Papp v. Fore-Kast Sales Co.,* 842 F.3d 805, 812 (3d Cir. 2016); *In re Commonwealth's Motion to Appoint Counsel Against or Directed to Def. Ass'n of Philadelphia*, 790 F.3d 457, 471 (3d Cir. 2015), *as amended* (June 16, 2015); *see also Mesa v. California,* 489 U.S. 121, 124-25, 129-31, 134-35 (1989); *Hagen v. Benjamin Foster Co.*, 739 F. Supp. 2d 770, 776 (E.D. Pa. 2010) (quoting *Feidt v. Owens Corning Fiberglas Corp.*, 153 F.3d 124, 127 (3d Cir. 1998)); *Fung v. Abex Corp.,* 816 F. Supp. 569 (N.D. Cal. 1992); *Machnik v. Buffalo Pumps, Inc.,* 506 F. Supp. 2d 99, 102 (D. Conn. 2007).   Here, HIC has alleged these requirements and is thus entitled to remove the case.

A.      **HIC Is a "Person" Under § 1442(a)(1).**

27.     A corporation is a "person" within the meaning of section 1442(a)(1).  *Hagen,* 739 F. Supp. 2d at 776 n. 6 ("It is well settled that corporations such as Defendants do qualify as

---

[3] Before 2011, § 1442(a)(1) required that the suit be "for any act under color of [federal office]. Thus, "a defendant had to 'show a nexus, a causal connection between the charged conduct and asserted official authority.'" *Papp*, 842 F.3d at 813.  However, the statute was amended in 2011 to allow removal for claims "for *or relating to* any act under color of [federal office]." *Id.* (emphasis added).  Recognizing that this change "was intended to 'broaden the universe of acts that enable Federal officers to remove [suits] to Federal court,'" the Third Circuit has since instructed "it is sufficient for there to be a connection or association between the act in question and the federal office." *Id.*

7

persons under the statute…."); *Pack v. AC&S*, 838 F. Supp. 1099 (D. Md. 1993); *Fung*, 816 F.

Supp. at 572. Thus, HIC was, at all relevant times, a "person" within the meaning of the statute.

**B.   HIC Was Acting Under the Direction of the Navy.**

28.   An entity acts under a federal officer when it assists, or helps carry out, the duties

or tasks of a federal superior. *Watson v. Philip Morris Companies, Inc.*, 551 U.S. 142, 152

(2007); *see also Papp*, 842 F.3d at 812 ("The 'acting under' requirement, like the federal

removal statute overall, is to be 'liberally construe[d]' to cover actions that involve 'an effort to

assist, or to help *carry out*, the federal supervisor's duties or tasks.'") (emphasis in original).

Stated differently, "[a] defendant acts under a federal officer where his or her actions that led to

the lawsuit were based on a federal 'officer's direct orders or comprehensive and detailed

regulations.'" *Hagen*, 739 F. Supp. 2d at 776 n. 6 (quoting *Good v. Armstrong World Indus.,

Inc.*, 914 F. Supp. 1125, 1128 (E.D. Pa. 1996)). Contracting to "provide a product that the

Government was using during war—a product that in the absence of Defendants, the

Government would have to produce itself"—under the close supervision of the Government has

been held sufficient to satisfy the "acting under" prong of the analysis. *Isaacson v. Dow Chem.

Co.*, 517 F.3d 129, 136-37 (2d Cir. 2008); *see Watson*, 551 U.S. at 153-54; *Papp*, 842 F.3d at

813 ("When, as occurred in this instance, 'the federal government uses a private corporation to

achieve an end it would have otherwise used its own agents to complete,' that contractor is

'acting under' the authority of a federal officer.").

29.   That is the case here. To the extent HIC used any asbestos-containing products in

the design or construction of the USS *John F. Kennedy* or the USS *Blakeley*, HIC was acting

under the direction of an officer of the United States within the meaning of 28 U.S.C. §

1442(a)(1) pursuant to its contracts with the Navy. The Newport News and Avondale Shipyards'

execution of HIC's contracts with the Navy were done under the supervision and control of the

Navy in strict accordance with precise specifications provided by the Navy. *See* Ex. B, Sargent Decl. ¶¶ 34-37. If the materials or work failed to conform to the detailed Navy specifications, the Navy officers could and would reject the materials or work. *See id.*

## C.    HIC Asserts Four Colorable Federal Defenses.

30.    HIC has asserted facts establishing four colorable federal defenses that entitle it to remove this case: (1) the government contractor defense under *Boyle v. United Technologies Corp.,* 487 U.S. 500 (1988); (2) derivative immunity under *Yearsley v. WA Ross Construction Co.*, 309 U.S. 18 (1940); (3) derivative immunity under *Feres v. U.S.*, 340 U.S. 135 (1950); and (4) pre-emption under the "combatant activities exception" of the Federal Tort Claims Act.

31.    "While the Court must require that the facts identified by the defendant support the federal defense, the Court is not called upon at this preliminary stage to pierce the pleadings or dissect the facts stated. Nor is the Court's function at this stage to determine credibility, weigh the quantum of evidence or discredit the source of the defense." *Hagen,* 739 F. Supp. 2d at 782.

> It is the sufficiency of the facts stated — not the weight of the proof presented — that matters. For policy reasons, Congress has erected a road to federal court for litigants who can invoke a federal defense. It is not the Court's role to impose judicially created tolls on those who seek to travel on it. Thus, the Court concludes that a defense is colorable for purposes of determining jurisdiction under Section 1442(a)(1) if the defendant asserting it identifies facts which, viewed in the light most favorable to the defendant, would establish a complete defense at trial.

*Id.* at 782-83; *see also Papp*, 842 F.3d at 815 ("At the removal stage, [the defendant] needed only show that its asserted *Boyle* defense was 'colorable,' which is to say that the defense was 'legitimate and [could] reasonably be asserted, given the facts presented and the current law.'").

32.    Construction of the USS *John F. Kennedy* and USS *Blakeley* at the Newport News Shipyard and Avondale Shipyard, respectively, was done pursuant to contracts with the

9

Navy, according to the strict specifications of the Navy and under the strict supervision of the Navy. *See* Ex. B, Sargent Decl. ¶¶ 34-37.

33.    The Navy selected the component parts and materials for the ships and submarines that HIC constructed, overhauled, and repaired, and specified their design, including the use of asbestos, if any. Ex. B, Sargent Decl. ¶¶ 24-33. The Newport News and Avondale Shipyards had no discretion with respect to the component parts and materials used in connection with constructing, overhauling, and repairing Navy ships and submarines. *Id.*

34.    This is true with respect to any asbestos-containing materials or component parts that were used. Due to the importance of heat transfer and insulation in Navy propulsion plants and aboard Navy vessels more generally, the Navy maintained significant expertise in this area. The BUSHIPS manual and other documents issued and continuously updated by the Navy contained detailed instructions for the insulation by Navy shipyards or private contractors of various systems and equipment. The Navy's specifications provided detailed instructions as to the specific insulating materials to be used, and also as to the amounts of those materials and the manner in which they were to be applied. *Id.* ¶ 40; *see id.* ¶¶ 38-50.

35.    Further, to achieve its objective of ensuring that any markings on the component parts or materials used in the construction of Navy ships filled the specific informational role the Navy desired, for the specific Navy audience and environment, the Navy developed precise specifications as to the nature of any markings, communications, or directions affixed to or made a part of any equipment supplied by equipment manufacturers for ultimate use aboard Navy ships. *Id.* ¶ 62. Constructing shipyards would not have been permitted, under the specifications, associated regulations and procedures, nor under the actual practice as it evolved in the field, to vary or to deviate in any respect from the Navy specifications in supplying equipment, including

affixing any type of warning or caution statement to equipment intended for installation in a Navy ship, beyond those specifically required by the Navy without prior discussion and express approval by the Navy. *Id.* ¶ 62.

36.    The Navy had state of the art knowledge concerning the potential risks associated with exposure to asbestos. The Navy was, and still is, one of the world's largest heavy industrial concerns and had its own industrial hygiene program to provide protection for its uniformed and civilian workforce. As a result, Navy organizations, including the Bureau of Medicine and Surgery, the Bureau of Ships, and their successors, developed and acquired state of the art knowledge concerning the potential risks or hazards relating to work with or around asbestos-containing materials and products. The Navy possessed information superior to that of its government contractors on issues of industrial hygiene and asbestos medicine, including any potential risks involved with use of asbestos-containing components or materials. *See id.* ¶ 16; *see also, e.g., Kraus v. Alcatel-Lucent et. al.*, No. CV 18-2119, 2018 WL 3585088, at *5 (E.D. Pa. July 25, 2018); *Blackman v. Asbestos Defendants (BHC),* 1997 WL 703773, *3 (N.D.Cal. 1997); *Marley v. Elliott Turbomachinery Co., Inc.,* 545 F. Supp. 2d 1266, 1271 (S.D. Fla. 2008); *Pack,* 838 F. Supp. 1099; *Fung,* 816 F. Supp. 569; *Shuman v. United States*, 765 F.2d 283, 285-86 (1st Cir. 1989); *Zeringue v. Crane Co.*, 846 F.3d 785, 791–92 (5th Cir. 2017); *Kase v. Metalclad Insulation Corp.*, 6 Cal. App. 5th 623, 643 (Ct. App. 2016).

37.    Shipyards, both public Naval Shipyards and private shipyards, such as the Newport News Shipyard and Avondale Shipyard, were required to use exactly the materials specified by their contracts with the Navy and could not vary from those detailed requirements without prior approval from the Navy and a modification to the contract documenting any approved variation from the original contract. *See* Ex. B, Sargent Decl. ¶ 49.

38.     All Navy vessels constructed by the Newport News Shipyard and the Avondale Shipyard were subject to inspection and testing by the Navy prior to approval to ensure complete conformity with the design specifications. *See* Ex. B, Sargent Decl. ¶ 34.

*i.*      *Boyle v. United Technologies Corp.*

39.     Based on these facts, Plaintiff's claims against HIC are affirmatively barred by the government contractor defense as set forth by the U.S. Supreme Court in *Boyle v. United Technologies Corp.,* 487 U.S. 500 (1988). Pursuant to this federal defense, government contractors, such as HIC, are immune from liability arising from work performed for the United States military when: (a) the United States approved reasonably precise specifications; (b) the equipment conformed to these specifications; and (c) the equipment supplier warned the military about any hazards involved in the use of the equipment that are known to the equipment supplier but not known to the military. *Boyle,* 487 U.S. at 512; *see Papp*, 842 F.3d at 814 (3d Cir. 2016); *Hagen*, 739 F. Supp. 2d at 783.

40.     Analyzing the *Boyle* factors in light of the facts set forth above, it is clear that HIC has a colorable federal defense with respect to Plaintiff's claim: (a) the Navy provided strict design specifications for the construction of the USS *John F. Kennedy* and USS *Blakeley,* including the use of asbestos-containing products and equipment, if any, (b) HIC complied with the Navy's specifications for the construction of the USS *John F. Kennedy* and USS *Blakeley,* including the use of asbestos-containing products, if any, and (c) the Navy had state of the art knowledge and was aware of potential health hazards of working with or around asbestos-containing materials, and thus, HIC would not have had knowledge of any hazards associated with the use of the equipment or materials which was not already known to the United States. HIC is thus entitled to the government contractor defense with respect to Plaintiff's claims. *See,*

12

*e.g., Vedros v. Northrop Grumman Shipbuilding, Inc.*, No. CIV.A. 2:11-67281-ER, 2012 WL

3155180, at \*7 (E.D. Pa. Aug. 2, 2012); *Blackman,* 1997 WL 703773, \*3; *Marley,* 545 F. Supp.

2d at 1271; *Pack,* 838 F. Supp. 1099; *Fung,* 816 F. Supp. 569; *see also Shuman*, 765 F.2d at 285-

86; *Zeringue*, 846 F.3d at 791–92; *Kase*, 6 Cal. App. 5th at 643.

41.     HIC has successfully removed a number of cases alleging facts similar to those in

Plaintiff's Complaint. *See, e.g., Fend v. Allen-Bradley Company, et. al.,* Civ. No. 2:17cv1701-

ER (E.D. Pa. Apr. 20, 2017); *Terry et al v. Thomas Dee Engineering Company et al*, No. 2:12-

cv-03576-DSF-MAN (C.D. Cal. April 25, 2012); *Cotten v. Asbestos Corp Ltd et al*, No. 3:14-cv-

02124-JD (N.D. Cal. May 8, 2014); *Fannin et al v. Asbestos Corporation Limited et al*, No.

3:11-cv-06156-WHO (N.D. Cal. December 7, 2011); *see also, e.g., Quisenberry v. BorgWarner

Morse Tec Inc.*, Civil Action No. 4:16cv126 (E.D. Va. Jan. 30, 2017); *Blackburn v. Northrup

Gruman Newport News*, 2:07-CV-63993-ER (E.D. Pa. MDL 875 Aug. 10, 2011) (denying

Plaintiffs' Motion for Remand in fifteen separate cases against the Shipyard).   HIC is entitled to

the same outcome here.

### ii.     *Yearsley v. WA Ross Construction Co.*

42.     HIC is also entitled to federal officer removal under 28 U.S.C. 1442(a)(1) based

upon the separate and additional federal defense of derivative sovereign immunity as set forth in

*Yearsley v. WA Ross Construction Co.*, 309 U.S. 18 (1940).

43.     *Yearsley* established that a government contractor, performing at the direction and

authorization of a government officer, is immune from suit based upon performance of the

contract. *Id.* at 20-21; *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 673 (2016), *as revised*

(Feb. 9, 2016) ("Where the Government's 'authority to carry out the project was validly

conferred, that is, if what was done was within the constitutional power of Congress,' we

13

explained, 'there is no liability on the part of the contractor' who simply performed as the Government directed." (quoting *Yearsley*)).

44.     For the reasons stated in Paragraph 40 above, that is the case here.  To the extent HIC used asbestos in the construction of the USS *John F. Kennedy* and USS *Blakeley*, it did so as a result of the Navy's strict design specifications.  In other words, HIC's use of such products occurred at the direction of the Navy and pursuant to government authorization, such that if the government had performed these acts directly, it would be immune from suit.  HIC should be as well.

    *iii.*     *Feres v. U.S.*

45.     HIC has also asserted a colorable defense under *Feres v. U.S.*, 340 U.S. 135 (1950).  In *Feres,* the United States Supreme Court held that the United States government is immune from suit by service members for "injuries that arise out of or in the course of activity incident to service."  *Id.* at 146.  Here, HIC acted under the direction and control of the United States Navy, and it is thus entitled to derivative immunity.

46.     According to Plaintiff's allegations, Decedent served in the United States Navy. Plaintiff claims that her Decedent was exposed to asbestos while serving on various Navy ships. Under *Feres*, the decedent plainly could not assert a claim against the United States for his service related injuries.

47.     As discussed herein, HIC constructed the USS *John F. Kennedy* and the USS *Blakeley* according to the strict specifications of the Navy, including the use of asbestos, if any. As a government contractor following the specifications of the Navy, HIC should be entitled to the same immunity afforded the United States under *Feres*.

14

### iv.    *Combatant Activities Exception*

48.    HIC is also entitled to federal officer removal under 28 U.S.C. 1442(a)(1) based upon its colorable federal defense under the "combatant activities exception" of the Federal Tort Claims Act, which bars suit against the federal government for claims "arising out of the combatant activities of the military or naval forces, or the Coast Guard, during time of war." 28 U.S.C. § 2680(a).    The principles underlying the combatant activities exception have been extended to preempt claims against government contractors. *See, e.g. Saleh v. Titan Corp.*, 580 F.3d 1 (D.C. Cir. 2009), *Koohi v. United States,* 976 F.2d 1328, 1336 (9th Cir. 1992).

49.    The Third Circuit has adopted a two-prong test to determine whether the "combatant activities" exception applies. *Harris v. Kellogg Brown & Root Services, Inc.*, 724 F.3d 459 (3d Cir. 2013).    The first prong is "whether the contractor is integrated into the military's combatant activities."  *Id.* at 481.    The second prong is "whether the contractor's actions were the result of the military's retention of command authority" over the activities at issue.  *Id.* Here, both prongs are satisfied.

50.    HIC's construction of an aircraft carrier (the *Kennedy*) and a destroyer escort (the *Blakely*), both built during the Vietnam War, satisfies the "combatant activities" prong.    A contractor does not have to participate in actual combat to invoke immunity under this provision. Rather, combatant activities "include not only physical violence but activities both necessary to and in direct connection with actual hostilities."  *Id.* (citations omitted).    Here, not only were the ships built during the Vietnam War, but Decedent allegedly served on them while the Vietnam War was ongoing—and in the case of the USS *Blakeley*, while the ship was in a Vietnam combat zone.    *See, e.g.,* Naval History and Heritage Command, John F. Kennedy (CVA-67), https://www.history.navy.mil/research/histories/ship-histories/danfs/j/john-f-kennedy-cva-67.html; U.S. Navy, Dictionary of American Naval Fighting Ships Online, "Blakely III (DE-

1072)" (E.M. Eller ed.) (*available at* https://www.history.navy.mil/research/histories/ship-histories/danfs/b/blakely-iii.html).

51. The second prong is also satisfied. As discussed herein, the Navy retained command control over the construction of the ships and specified the materials to be used, including asbestos-containing materials, if any.

52. Thus, HIC has asserted a colorable defense that it is entitled to immunity under the "combatant activities" exception to the Federal Tort Claims Act.

**D.   HIC Has Demonstrated a Connection Between Plaintiff's Claims and the Acts It Performed Under Color of Federal Office.**

53. HIC has plainly demonstrated a "connection" or "association" between Plaintiff's claims in this action and the acts taken by HIC under the direction of federal officers. In fact, HIC has even shown the "causal nexus" that was formerly required under § 1441(a)(1). Plaintiff's claims against HIC arise from her Decedent's alleged exposure to asbestos on Navy ships constructed by HIC pursuant to the specifications of its contracts with the Navy and under the direct supervision of the Navy. As set forth above, the claims against HIC are inseparable from the government specifications that required the use of asbestos, if any, such that a clear causal nexus exists between Plaintiff's claims and the acts performed by HIC under color of federal office. *See Boyle,* 487 U.S. 500; *Mitchell v. AC & S, Inc.,* No. CIV.A. 4:04CV2713, 2004 WL 3831228, at *12-13 (E.D. Va. Dec. 15, 2004); *Magnin,* 91 F.3d at 1427; *Marley,* 545 F. Supp. 2d at 1271; *Sundstrom v. McDonnell Douglas Corp.,* 816 F.Supp. 587 (N.D. Cal. 1993); *Fung,* 816 F.Supp. 569; *Pack,* 838 F. Supp. 1099. All the more so, a "connection" or "association" between the act in question and the federal office has been demonstrated.

## IV.   CONCLUSION

54. Removal of this action is proper under 28 U.S.C. § 1442 (a)(1).

16

55.    Should Plaintiff move to remand this case, HIC respectfully requests an opportunity to respond more fully in writing, including the submission of additional affidavits and authority.

56.    HIC reserves all of its defenses.

WHEREFORE, Huntington Ingalls Incorporated has stated separate and independent bases for removal under § 1442, and thus, respectfully requests, subject to and without waiving its objection to the exercise of personal jurisdiction, that this matter proceed in federal court. This Notice has been served on all counsel of record on the date and manner stated in the Certificate of Service.

Respectfully submitted this 21st day of August, 2018.

**HUNTON ANDREWS KURTH LLP**

Alexandra Brisky Cunningham (*pro hac vice to be filed*)
Thomas R. Waskom (Pa. Bar No. 321664)
Merideth Snow Daly (*pro hac vice to be filed*)
951 East Byrd Street
Riverfront Plaza, East Tower
Richmond, Virginia 23219
Telephone: (804) 788-8403
acunningham@huntonak.com
twaskom@huntonak.com
mdaly@huntonak.com

***Attorneys for Defendant Huntington Ingalls Incorporated***