PAUL, REICH & MYERS, P.C.
By:    Robert E. Paul, Esquire
Identification No. 21252
1608 Walnut Street, Suite 500                    Attorney for Plaintiff
Philadelphia, PA 19103
(215) 735-9200

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JACKIE L. SULLIVAN, Executrix of the<br>Estate of JOHN L. SULLIVAN,<br>deceased, and widow in her own right<br>304 Woodway Drive<br>Lynchburg, VA 24501 | :CIVIL ACTION<br>:<br>:<br>:<br>:<br>: |
| vs. | :NO. 18-CV-3622<br>: |
| A.W. CHESTERTON, INC.<br>860 Salem Street<br>GROVELAND, MA  01834 | :<br>:<br>: |
| vs. | :<br>: |
| ALLEN-BRADLEY COMPANY<br>CT Corporation Systems<br>8020 Excelsior Drive, Suite 200<br>MADISON, WI USA  53717 | :<br>:<br>:<br>:<br>: |
| vs. | :<br>: |
| AURORA PUMP<br>c/o Lynette Jones<br>13515 Ballantyne Corporate Place<br>CHARLOTTE, NC  28277 | :<br>:<br>:<br>:<br>: |
| vs. | :<br>: |
| Armstrong International<br>2081 Southeast Ocean Blvd., 4th Floor<br>STUART, FL  34996 | :<br>:<br>:<br>: |
| vs. | :<br>: |
| BATH IRON WORKS | : |

700 Washington Street                            :
BATH, ME  04530                                  :
                                                 :
        vs.                                      :
                                                 :
BF GOODRICH COMPANY                              :
2730 W. Tyvola Road                              :
CHARLOTTE, NC  28217-4543                        :
                                                 :
        vs.                                      :
                                                 :
BUFFALO PUMPS, INC.                              :
874 Oliver Street                                :
NORTH TONAWANDA, NY  14120                       :
                                                 :
        vs.                                      :
                                                 :
CARRIER CORPORATION                              :
1 Carrier Place                                  :
FARMINGTON, CT  06034                            :
                                                 :
        vs.                                      :
                                                 :
CBS Corporation, formerly Westinghouse Electric  :
Corporation                                      :
c/o Prentice Hall                                :
80 State Street                                  :
ALBANY, NY  12207                                :
                                                 :
        vs.                                      :
                                                 :
CERTAIN-TEED CORPORATION                         :
20 Moores Road                                   :
MALVERN, PA  19355                               :
                                                 :
        vs.                                      :
                                                 :
CLARK CONTROLLER CO.                             :
c/o GTE Products of Connecticut Corporation      :
600 Hidden Ridge                                 :
IRVING, TX  75038                                :
                                                 :
        vs.                                      :
                                                 :
CLEAVER-BROOKS, INC.                             :

A Division of Aqua-Chem, Inc.                    :
3707 North Richards                               :
P O Box 421                                       :
MILWAUKEE, WI  53201                              :
                                                  :
            vs.                                   :
                                                  :
COONEY BROTHERS                                   :
1850 North Gravers Road, #100                     :
PLYMOUTH MEETING , PA  19462                      :
                                                  :
            vs.                                   :
                                                  :
CRANE CO.                                         :
100 First Stamford Place                          :
STAMFORD, CT  06902                               :
                                                  :
            vs.                                   :

EDWARDS VALVE                                     :
k/n/a Flowserve                                   :
5215 N. O'Connor Blvd, Suite 2300                 :
IRVIN, TX  75039                                  :
                                                  :
            vs.                                   :
                                                  :
FLOWSERVE                                         :
(successor to Anchor Darling)                     :
Legal Department                                  :
5215 N. O'Connor Blvd., Suite 2300                :
IRVING, TX  75039                                 :
                                                  :
            vs.                                   :
                                                  :
FOSTER WHEELER, LLC                               :
P.O. BOX 9000                                     :
HAMPTON, NJ  08827                                :
                                                  :
            vs.                                   :
                                                  :
GENERAL DYNAMICS                                  :
2941 Fairview Park Drive                          :
FALLS CHURCH, VA  22042                           :
                                                  :
            vs.                                   :

GENERAL ELECTRIC COMPANY                          :
c/o CT Corporation Systems                        :
600 North 2nd Street, Suite 401                   :
HARRISBURG, PA  17101                             :
                                                  :
                    vs.                           :
                                                  :
GOODYEAR CANADA                                   :
450 Kipling Avenue                                :
TORONTO, ON CANADA  M8Z5E7                        :
                                                  :
                    vs.                           :
                                                  :
GOODYEAR TIRE AND RUBBER CO.                      :
CORPORATION SERVICE CO.                           :
251 Little Falls Drive                            :
WILMINGTON, DE  19808                             :
                                                  :
                    vs.                           :
                                                  :
GOULDS PUMPS INC.                                 :
270 Fall Street                                   :
SENECA FALLS, NY  13148                           :
                                                  :
                    vs.                           :
                                                  :
GREENE, TWEED & CO., INC.                         :
c/o Greene, Tweed NC, LLC                         :
227 West Trade Street, Suite 2170                 :
CHARLOTTE, NC  28202                              :
                                                  :
                    vs.                           :
                                                  :
Gardenr Denver                                    :
222 E. Erie Street                                :
MILWAUKEE, WI  53202                              :
                                                  :
                    vs.                           :
                                                  :
Gardner-Denver-Nash                               :
P.O. Box 130                                      :
BENTLEYVILLE, PA  15314                           :
                                                  :
                    vs.                           :

HUNTINGTON INGALLS INDUSTRIES          :
4101 Washington Avenue                 :
NEWPORT NEWS, VA  23607                 :
                                       :
            vs.                        :
                                       :
Hercules                               :
2770 S. Erie Street                    :
MASSILLON , OH   44646                  :
                                       :
            vs.                        :
                                       :
Howden North American                  :
2475 George Urban Blvd., Suite 120     :
DEPEW, NY  14043                        :
                                       :
            vs.                        :

IMO INDUSTRIES,  INC.                   :
f/k/a De Laval Steam Turbine Company    :
The Corporation Trust Company          :
1209 Orange Street                     :
WILMINGTON, DE  19801                   :
                                       :
            vs.                        :
                                       :
INGERSOLL-RAND & CO.                    :
Corporate Center                       :
One Centennial Avenue                  :
PISCATAWAY, NJ  08854                   :
                                       :
            vs.                        :
                                       :
ITT BELL GOSSET                         :
8200 N. Austin Avenue                  :
MORTON GROVE, IL  60053                 :
                                       :
            vs.                        :
                                       :
ITT INC.                               :
1133 Westchester Avenue                :
WHITE PLAINS, NY  10604                 :
                                       :
            vs.                        :

J.A. SEXAUER                                              :
570 Taxter Road, Suite 230                               :
ELMSFORD, NY  10523                                     :
                                                         :
                                                         :
            vs.                                          :
                                                         :
JENKINS PUMPS                                            :
816 Gurbly Road                                         :
Piqua, OH  45356                                        :
                                                         :
                                                         :
            vs.                                          :
                                                         :
JENKINS VALVES                                           :
539 Collier MacMillan Drive, Unit C                      :
CAMBRIDGE ONTARIO ,  CANADA  N1R 7P3                    :
                                                         :
                                                         :
            vs.                                          :
                                                         :
JOHN CRANE, INC.                                         :
6400 Oakton Road                                        :
MORTON GROVE, IL  60053                                 :
                                                         :
                                                         :
            vs.                                          :
                                                         :
JOHNSON CONTROLS                                         :
Successor to York                                       :
5757 N. Green Bay Avenue                                :
MILWAUKEE, WI  53209                                    :
                                                         :
                                                         :
            vs.                                          :
                                                         :
KUNKLE VALVE                                             :
953 Old US Highway 70                                   :
BLACK MOUNTAIN, NC  28711                               :
                                                         :
                                                         :
            vs.                                          :
                                                         :
METROPOLITAN LIFE INSURANCE CO.                          :
200 Park Avenue, Room 3200                              :
NEW YORK , NY  10166                                    :
                                                         :
                                                         :
            vs.                                          :
                                                         :
MINNESOTA MINING AND MANUFACTURING:

3 M Center                                          :
ST. PAUL, MN  55144                                 :
                                                    :
            vs.                                      :
                                                    :
NORTHERN PUMP                                        :
340 W. Benson Ave.                                  :
GRANTSBURY, WI  54840                               :
                                                    :
            vs.                                      :
                                                    :
NORTHROP GRUMMAN CORPORATION                         :
2980 Fairview Drive                                 :
FALLS CHURCH, VA  22042                             :
                                                    :
            vs.                                      :
                                                    :
SELBY BATTERSBY AND COMPANY                          :
n/k/a SB DECKING, INC.                              :
c/o Alan R. Gries, Esq                              :
GIBBONS, P.C.                                        :
One Logan Square                                    :
130 N. 18th Street, Suite 1210                      :
Philadelphia, PA  19103                             :
                                                    :
            vs.                                      :
                                                    :
SQUARE D COMPANY                                     :
200 N. Martingale Road, Suite 100                   :
SCHAUMBURG, IL  60173                               :
                                                    :
            vs.                                      :
                                                    :
VIAD CORPORATION                                     :
f/k/a Dial Corp.                                     :
1850 N Central Ave, Ste 1900                        :
PHOENIX, AZ  85004                                  :
                                                    :
            vs.                                      :
                                                    :
WARREN PUMPS LLC                                     :
Corporation Trust Center                            :
1209 Orange Street                                  :
WILMINGTON, DE  19801                               :
                                                    :

vs.                                                  :
                                                     :
WEIL McLAIN, A Division of The Marley Co.,           :
A Wholly Owned Subsidiary of United Dominion         :
Industries, Inc.                                     :
500 Blaine Street                                    :
MICHIGAN CITY, IN  46360                             :
                                                     :
                                                     :
        vs.                                          :
                                                     :
WEIL PUMP                                            :
6337 Western Road                                    :
P.O. Box 887                                         :
CEDARBURG, WI  53012                        :ASBESTOS CASE

---

**FIRST AMENDED COMPLAINT**

PAUL, REICH & MYERS, P.C.
By:    Robert E. Paul, Esquire
Identification No. 21252
1608 Walnut Street, Suite 500                                   Attorney for Plaintiff
Philadelphia, PA 19103
(215) 735-9200

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JACKIE L. SULLIVAN, Executrix of the | :CIVIL ACTION |
| Estate of JOHN L. SULLIVAN, | : |
| deceased, and widow in her own right | : |
| 304 Woodway Drive | : |
| Lynchburg, VA 24501 | : |
| | : |
| vs. | :NO. 18-CV-3622 |
| | : |
| A.W. CHESTERTON, INC. | : |
| 860 Salem Street | : |
| GROVELAND, MA  01834 | :ASBESTOS CASE |

### FIRST AMENDED COMPLAINT

1)    Plaintiff, Jackie L. Sullivan, Executrix of the Estate of John L. Sullivan, resides at 304

Woodway Drive, Lynchburg, VA, and is a citizen of the State of VA.  The decedent who was

exposed to asbestos was John L. Sullivan, who died on 12/23/16.

2)    Plaintiff's deceased, John L. Sullivan, was born on September 20, 1948.

3)    Plaintiff's deceased, John L. Sullivan's only dependent was his wife Jackie L. Sullivan.

4)    Plaintiff's deceased, John L. Sullivan, smoked approximately 1 pack(s) of cigarettes  per

day from 1965 until 2015.

5)    Plaintiff's Social Security and IRS records will be furnished upon receipt.

6)    Plaintiff's work history is as follows:

2

a) Gas Station in Missouri.

b) Entered Navy October 18, 1967 and was assigned to USS Norfolk, DL-1, 1/7/68-9/27/68.

   USS Biddle, DL 6-34, 1/8/69-8/8/69.

   USS Lexington, 1/3/70-6/14/71, 6/25/71-2/4/72.

   Throughout this period he was assigned to the fire rooms and engine rooms of the ships

and rose to the rank of E5 as a machinist mate.  On the Biddle he was exposed to asbestos

released into the engine and fire rooms during repairs at Philadelphia Navy Yard.

c) In 02/05/72 to 12/31/72 he served in the Naval Reserve as machinist mate.

d) In 1/2/73 he re-entered the Navy.  He was initially assigned to USS Blakely DE-1072.

   Later he was assigned to USS Saratoga in 1975-1976.  That ship had been overhauled at

   the Philadelphia Navy yard and asbestos dust released during that repair was still in the

   air of the engine rooms and fire rooms of the ship where decedent breathed the asbestos

   dust and which inhalation caused his lung cancer.

e) In 1977-January 10, 1980 he was assigned to the USS Charles Adams.  During his service

   on the Adams the ship spent a full year at the Philadelphia Navy Yard during repair.

   Decedent was involved in asbestos removal and installation.  During that process he

   inhaled asbestos being released from pipes, covering, compressors, turbines, boilers and

   valves on the ship in Philadelphia.

f) Plaintiff believes and therefore avers decedent had no known asbestos exposure after

   January 10, 1980.

7) The defendants are those companies listed in the caption.  The principal places of

3

business and the states of incorporation of each of the defendants are set out in the above-referenced filed master complaint or herein.

a)      Defendant A.W. Chesterton sold asbestos containing packing and gaskets to which decedent was exposed.  Exposure to asbestos dust and fibers from these gaskets and packing caused the injuries herein.

b)      Defendant, Allen-Bradley Company, is a Wisconsin corporation with its principal place of business at 1201 S. Second Street, Milwaukee, Wisconsin 53204. Allen-Bradley is the successor in interest to the Rostone Corporation or sole shareholder of its creature and alter ego Rostone Corporation. It is responsible for all injuries caused by Rostone or by the Rostone Division of Allen-Bradley or its predecessors. The various Rostone entities sold Rosite and other asbestos containing products to Westinghouse Electric and other entities. These asbestos products caused the injuries complained of herein.

c)      At all times material defendant Aurora Pump or its predecessors in interest sold equipment or valves or both insulated with asbestos or designed to be insulated with asbestos. Exposure to the asbestos dust and fibers from the asbestos in Aurora Pumps caused the injuries herein.

d)      At all times materials Armstrong sold steam traps, air vents and liquid drainers which contained asbestos gaskets.  Exposure to the asbestos in the Armstrong steam traps, air vents and liquid drainers on the traps caused the injuries herein.

e)      Bath Iron works registered with the Pennsylvania Secretary of state in 1954 and again in 2003.  It thus subjected itself to the in personam jurisdiction of Pennsylvania.  Bath Iron Works built and repaired ships intended and designed to be insulated with asbestos.  It knew its

4

ships would be repaired at the Philadelphia Navy Yard including the USS Adams.  As a result of exposure to this asbestos the injured party developed the injuries complained of herein.

      f)     Defendant, BF Goodrich Company, is a New York corporation with its principal place of business located at 3925 Embassy Parkway, Akron, Ohio. At all times material it sold cement, gaskets and brake linings to which the injured person was exposed.

      g)     At all times Buffalo sold pumps and/or valves insulated with asbestos or designed to be insulated with asbestos. As a result of exposure to asbestos on Buffalo pumps the injured party suffered the injuries complained of herein.

      h)     At all times material Carrier sold asbestos containing equipment. Exposure to asbestos on Carrier's equipment caused the injuries complained of herein.

      i)     CBS is the successor in interest to Westinghouse and Sturtevant.  At all times material Westinghouse and Sturtevant sold turbines, generators, blowers and other equipment intended and designed to contain asbestos.  Exposure to asbestos dust and fibers from the equipment caused the injuries herein.

      j)     Defendant Certain Teed sold roofing and cement pipe contain asbestos.  Exposure to those asbestos products caused the injuries herein.

      k)     Clark Controller sold asbestos containing products and electrical equipment intended and designed to contain asbestos.  Exposure to asbestos dust and fibers from those products and the equipment caused the injuries herein.

l)      Defendant, Cleaver-Brooks, Inc., was a Delaware corporation with a principal place of business located in Lebanon, Pennsylvania. At all times material hereto Cleaver-Brooks, Inc. sold boilers which were designed or intended to be insulated with asbestos. Because the boilers failed to contain adequate and sufficient warnings of the possible hazards of asbestos, they were defective and the conduct of defendant in selling that those products without such warnings was negligent. Since asbestos insulation on the boilers had to be removed, it was dangerous and warnings should have been given.

m)      Cooney Brothers sold and handled asbestos containing products in decedent's vicinity.  This exposed him to asbestos which caused the injuries.

n)      Crane Company is a Delaware Corporation with its principal place of business in Connecticut. It is the successor in interest to its former parent, Crane Company, an Illinois corporation, and liable for injuries due to exposure to the former Illinois Crane's asbestos products. At all times material to this action, Crane's predecessor sold Cranite sheet packing, packing for valves, braided asbestos, wick and rope packing, asbestocel, 85% magnesia, wool felt and other asbestos pipe insulation.   It also sold valves designed and intended to contain asbestos. Exposure to the asbestos dust from these products caused the injuries complained of herein.

o)      At all times, Flowserve and its predecessors such as but not limited to Edwards Valve and Darling Valve sold or designed valves intended to contain asbestos, exposure to those valves and asbestos caused the injuries complained of herein.

p)      Defendant, Flowserve, successor in interest to Anchor Darling Valve, is a Pennsylvania corporation with its principal place of business located at 701 First Street,

Williamsport, Pennsylvania.  It designed its products to contain asbestos and exposure to those products caused the injuries herein.

q)      Foster Wheeler designed and sold boilers, condensers and evaporators intended to contain asbestos.  Exposure to asbestos on those boilers, condensers and evaporators caused the injuries herein.

r)      Gardner Denver is a Delaware Corporation, with a principal place of business in Wisconsin.  At all times material it sold equipment designed and intended to contain asbestos. Exposure to that asbestos caused the injuries herein.

s)      Gardner-Denver-Nash is the successor to Nash Energy.  Nash sold equipment designed and intended to contain asbestos.  Exposure to the asbestos ont he Nash equipment caused the injuries herein.

t)      General Dynamics registered with the Pennsylvania Secretary of state in 1957.  It thus subjected itself to the in personam jurisdiction of the Court.  General Dynamics owned the Fore River Shipyard which build the USS Lexington.  The defendant's predecessor Fore River designed and intended the Lexington to contain asbestos.

u)      General Electric designed and manufactured turbines, generators, pumps and other equipment designed to contain asbestos.  Exposure to the asbestos on its equipment caused the injuries herein.

v)      At all times materials Goodyear Canada made asbestos containing gaskets and packing.  Exposure to such products caused the injuries complained of herein.

7

w)      Defendant, Goodyear Tire & Rubber Co., is a corporation organized and existing under the laws of the Commonwealth of Kentucky with its principal place of business in Kentucky and is doing business in the Commonwealth of Pennsylvania. At all times material hereto, defendant, Goodyear Tire & Rubber Co., manufactured, produced and sold asbestos products either directly or indirectly, in the geographical area in which plaintiffs worked and/or to the employers of the plaintiffs, including, but not limited to, gaskets and packing.

x)      At all times, Gould Pumps sold asbestos products which caused the injuries complained of herein.  It designed and intended its pumps to contain asbestos.

y)      Defendant, Greene, Tweed & Company, is a Pennsylvania corporation with its principal place of business located at Detweiler Road, Kulpsville, Pennsylvania.  At all times material it sold asbestos containing gaskets.  Exposure to those products caused the injuries herein.

z)      Hercules is the successor in interest to Hercules which sold generators and other equipment designed and intended to contain asbestos.  Exposure to the asbestos on the Hercules equipment caused the injuries.

aa)     Howden North America is the successor in interest to Buffalo Forge.  At all times material Buffalo Forge sold equipment designed and intended to contain asbestos.  Exposure to the asbestos caused the injuries herein.

bb)     At all times material Huntington's predecessor Avondale ship yard designed the USS Blakely, DE 1072 later FF 1072 to contain asbestos.  Exposure to asbestos on the ship caused the injuries herein.  Further, Huntington's predecessors registered with the Pennsylvania

8

Secretary of State thus subjecting it to the in personam jurisdiction of Pennsylvania Courts. Huntington's predecessor designed its ship to contain asbestos and despite the ability to know of and warn of the hazards of asbestos failed to do so.

cc)     Defendant, IMO formerly DE Laval Steam Turbine Company is a Delaware Corporation with its principal place of business located in New Jersey.  At all times material it sold asbestos-containing turbines and other engines to which decedent was exposed and which caused his injury.

dd)     At all times material Ingersoll Rand sold products insulated with asbestos which exposed decedent to asbestos which caused injury.  Ingersoll is also the successor in interest to Terry Steam Turbine Company.

ee)     At all times material defendant ITT Bell Gosset sold asbestos containing pumps, heat transfer equipment and valves. The asbestos in that equipment caused the injuries complained of herein.

ff)     At all times relevant defendant, ITT through its Aquisition of Nesbitt, also acquired liabilities of Nesbitt.  The Nesbitt company designed its boilers and heating equipment to contain asbestos.  Exposure to asbestos on Nesbitt boilers caused the injuries herein.

gg)     Defendant, Sexauer J.A. Manufacturing Company is a California corporation with its principal place of business located at 105 Mayo Avenue, Vallejo, California. At all times material to this action it sold asbestos-containing products to which plaintiff or decedent was exposed. This exposure was a substantial contributing factor to the injury complained of herein.

9

hh)     At all times material defendant Jenkins sold pumps and valves insulated with asbestos or designed to be insulated with asbestos. Exposure to the asbestos from Jenkins pumps and valves caused the injuries complained of herein.

ii)     At all times material Jenkins Valves sold asbestos-containing products and such exposure to these products caused the injuries herein.

jj)     Defendant, John Crane, Inc., formerly known as Crane Packing and John Crane-Houdaille, is a Delaware corporation with its principal place of business at 6400 Oakton Road, Morton Grove, Illinois.  It sold asbestos containing packing and gaskets which caused the injuries herein.

kk)     At all times material defendant, Johnson Controls or its predecessors in interest designed and/or intended its equipment to include asbestos or knew its products were likely to be insulated with asbestos.  Exposure to the asbestos from the defendant's product caused the injuries complained of herein.

ll)     At all times, material Kunkle and its predecessor Je Lonergan sold valves designed to include asbestos, exposure to the valves and asbestos caused the injuries herein.

mm)     At all times material Metropolitan Life Insurance Company conspired with others to prevent dissemination of knowledge of the possible hazards of asbestos.

nn)     At all times material defendant Minnesota Mining and Manufacturing sold asbestos products which caused the injuries complained of herein including arc proofing tape and

10

also sold defective respirators which did not prevent the injuries herein. It is also sued as a

supplier of asbestos-containing body filler and other products for automobiles.

oo)     At all times material defendant Northern Pump sold pumps and valves insulated

with asbestos. The asbestos from there pumps and valves caused the injureis complained of

herein.

pp)     Defendant, Selby Battersby and Company, was a Pennsylvania corporation with

its principal place of business at 5220 Whitby Avenue, Philadelphia, Pennsylvania, 19143 and at

all times material it sold asbestos-containing spray and other asbestos-containing products to

which Plaintiff was exposed.

qq)     Defendant, Square D Company, is a Delaware corporation with its principal place

of business located at Executive Plaza, Palatine, Illinois. It negligently sold defective asbestos-

containing wire, cable, arc chutes and other asbestos-containing products including, but not

limited to, brakes to which plaintiff/decedent was exposed.

rr)     Defendant, Viad Corporation, is a Delaware corporation with its principal place of

business in Arizona. It is the successor in interest to Baldwin Locomotive Baldwin-Lima-

Hamilton and Gression Rural are responsible for all injuries caused by exposure to asbestos

products installed on Baldwin-Lima-Hamilton and Gression Rural products and which exposure

caused the injuries complained of herein.

ss)     At all times material defendant Warren Pump and/or its predecessors in interest

such as Quimby sold equipment or valves or both insulated with asbestos or designed to be

insulated with asbestos.

11

tt)    At all times material Weil sold products designed to use asbestos. The dust from the Weil pumps caused the injuries complained of herein.

8)    Machinery defendants referenced above also sold replacement or spare asbestos products to which decedent was exposed and which replacement asbestos products caused his injuries.

9)    Many of the machinery defendants and the ship owners supervised and directed the installation and repair of their equipment including repair and replacement with new asbestos products and reuse of the original asbestos they had supplied, installed or directed to be used on their equipment thus exposing decedent to the asbestos which caused his injuries. These included but are not limited to Westinghouse, General Electric and Foster Wheeler as well as the shipyard. All had obligations to warn of hazards.

10)    Many of the defendant such as but not limited to Westinghouse, GE and Foster Wheeler had civilian representatives on the ships during voyages to direct and supervise repairs of their asbestos-containing equipment.

11)    During the course of his employment at the worksites noted in Paragraph 6 supra, plaintiff believes and therefore avers that he was exposed to asbestos fiber or asbestos products manufactured, sold, distributed, or otherwise placed into the stream of commerce by the defendants.  The term asbestos products as used herein includes but are not limited to asbestos-containing products such as boilers and engines and furnaces and turbines.  The term asbestos-containing as used herein means products sold with asbestos or products whose designers, manufacturers and fabricators knew, should or could have known that it would be insulated or could be insulated with asbestos.

12

## GENERAL ALLEGATIONS AS TO ALL DEFENDANTS AND DEFINITIONS

12)     The term asbestos-containing as used herein means products sold with asbestos or

products whose designers, manufacturers and fabricators knew, should have known or could

have known that such products would be insulated or could be insulated with asbestos

13)     Plaintiff does not now know whether or not the decedent was exposed to asbestos

products at sites other than those enumerated in Paragraph 6 above, but she reserves her right to

assert at trial that he was so exposed at the other sites, should such evidence develop.  Plaintiff

avers that should such evidence develop he will promptly notife defendants well in advance of

trial.

14)     Defendants who are successor corporations have assumed the assets and liabilities of their

predecessors and they are responsible for the liabilities of their predecessors, both as to

compensatory damages and as to punitive damages.  As used in the Complaint, "decedent(s)"

includes, unless expressly stated to the contrary above, all predecessors for whose actions

plaintiffs claim the named defendant(s) is(are) liable.

15)     At all times material hereto, defendants an/or their predecessors acted through their

agents, servants or employees, who are acting within the scope of their employment on the

business of the defendants.  The defendants are all corporation, companies or other business

entities, which, during all times material hereto, and for a long time prior thereto, have been

and/or are now engaged, directly or indirectly, in the mining, milling, manufacturing, producing,

processing, compounding, converting, selling, merchandising, supplying, distributing and/or

otherwise placing in the stream of commerce, asbestos, material containing asbestos, asbestos

13

products and asbestos compounds (hereinafter collectively referred to as "asbestos products"). The term "asbestos products," for the purposes of this action, shall include asbestos fiber in any form and manufactured or finished products containing asbestos as well as larger pieces of equipment which included one or more asbestos products such as the airplanes and engines at issue in this case.

16)     Some defendants also designed their products to contain asbestos and knew that the asbestos would wear out and have to be replaced.  They are being sued for the failure to warn of the hazards in the product to wit including the asbestos replacement parts and their larger equipment.  These products are also included in the term asbestos products as they were intended to contain asbestos.

17)     Defendants knew of the hazards of asbestos and intentionally failed to warn.  More specific allegations as to the individual defendants are set out below.  It is believed and therefore averred that the other defendants knew of the hazards or could have learned of the hazards and failed to warn from the defendants who did know of the hazards who supplied products to them.

## COUNT I - NEGLIGENCE

18)     At all times material hereto, the asbestos products mined, manufactured, produced, designed processed, intended compounded, converted, sold, merchandised, supplied, distributed and/or otherwise placed in the stream of commerce by the defendants which the decedent continually worked with, used, handled, and were caused to come into contact with and be exposed to were under the exclusive control of the defendants and, accordingly, plaintiffs invoke the doctrines of Exclusive control and Res Ipsa Loquitur.  Defendants herein include ship yards

14

and machinery defendants who designed and build their products to contain asbestos.

19)     At all times material hereto, defendants knew or should and/or could have known that their asbestos products as set forth above and in their ordinary and foreseeable use would be used in connection with installation of insulation and other products and purposes in construction, would be used for installation of insulation in reconstruction and repair, would be used in the manufacture of asbestos products or would be used in a variety of work settings on ships would be ripped out and/or removed during reconstruction and repair (and that such ripping out would initially cause large quantities of asbestos dust and fibers to be released into the atmosphere of the work area for extended periods of time, to be later followed by the additional dust and fibers to be released into the atmosphere of the same work area upon the application of new asbestos products) and that asbestos dust released by those products during their intended and foreseeable use would be brought home by asbestos workers on their work clothes and tools, all of which defendants knew or should have known created hazardous and unsafe work areas and risk to the health of plaintiffs and others similarly situated.

20)     At all times material hereto, defendants mined, manufactured, produced, processed, compounded, converted, sold, merchandised, distributed, supplied, supervised repair of and/or otherwise placed in the stream of commerce the said asbestos products, all of which the defendants knew, or in the exercise of ordinary care should and/or could have know, were inherently defective, ultra hazardous, dangerous, deleterious, poisonous and otherwise highly harmful to the plaintiffs, and to other persons similarly situated.

21)     At all times material hereto, plaintiffs, and other persons similarly situated in the general

15

community, did not know of the nature and extent of the danger to their lungs, respiratory system, heart, other bodily parts including bone and tissue, and their general health that would result from their contact with and exposure to the defendants' asbestos products and to the inhalation of the asbestos dust and fibers resulting from the ordinary and foreseeable use of said asbestos products; and, at all times material hereto, each of the defendants knew, should have known, or could have reasonable determined that the plaintiffs, and other persons similarly situated, would be in contact with and be exposed to the defendants's asbestos products and to the inhalation of the asbestos dust and fibers resulting from the ordinary and foreseeable use of said asbestos products; and, despite such facts, defendants, individually, jointly and severally, as part of the conspiracy as alleged herein and/or as a result of tacit agreement or cooperation and/or as a result of industry-wide standards or practice:

        (a)    mined, manufactured, produced, processed, compounded, converted, sold, supplied, merchandised, distributed, and/or other wise placed in the stream of commerce, asbestos products which defendants knew, or in the exercise of ordinary care should and/or could have known, were inherently defective, dangerous, deleterious, ultra hazardous, poisonous and otherwise highly harmful to plaintiffs, and to other persons similarly situated;

        (b)    affirmatively misrepresented to plaintiffs and other members of the public in advertising, labels and otherwise that their asbestos products were safe in their ordinary and foreseeable use, which material misrepresentation induced plaintiffs to expose themselves to hazards;

        (c)    failed to take any reasonable precautions or to exercise reasonable care to

16

adequately or sufficiently warn plaintiffs, and other persons similarly situated, of the risks,

dangers and harm to which they were exposed by continuous work with, contact with, use,

handling, and exposure to defendants' asbestos products and the inhalation of the asbestos dust

and fibers resulting from the ordinary and foreseeable use of said asbestos products;

(d)     failed and omitted to provide the plaintiffs, and other persons similarly

situated, with the knowledge of reasonable safe and sufficient safeguards, wearing apparel and

proper safety equipment and appliances necessary to protect them from being injured, poisoned,

disable, killed, or otherwise harmed, by working with, using, handling, coming into contact with,

and being exposed to the defendants' asbestos products and the inhalation of the asbestos dust

and fibers resulting from the ordinary and foreseeable use of said asbestos products;

(e)     failed and omitted to place warnings, or adequate and sufficient warnings,

on the containers of the said asbestos products regarding the risks, dangers, and harm therefrom

and the precautions necessary to make said asbestos products safe for their ordinary and

foreseeable use by plaintiffs and other persons similarly situated in the general community;

(f)     failed to package the said asbestos products so that, in the ordinary and

foreseeable use and handling thereof, the plaintiffs, and other persons similarly situated, would

not come into contact with and be exposed to the inhalation of the asbestos dust and fibers from

said asbestos products;

(g)     failed to take reasonable, sufficient and proper precautions reasonably

calculated to reach such persons as the plaintiffs, and other persons similarly situated in the

general community, to warn them of the inherently dangerous, deleterious, ultra hazardous,

17

poisonous, and other wise highly harmful effects of the inhalation of the asbestos dust and fibers resulting from the ordinary and foreseeable use of the defendants' asbestos products and to instruct them in the proper and safe use and handling of said asbestos products;

(h)     failed to take any reasonable, sufficient and proper precautions or to exercise reasonable care to protect the plaintiffs, and other persons similarly situated, from harm and danger resulting from working with, using, handling, coming into contact with and being exposed to the defendants' asbestos products and the inhalation of the asbestos dust and fibers from the ordinary and foreseeable use of said asbestos products;

(i)     failed to adopt and enforce a safe, sufficient and proper plan and method of working with, using, handling, and coming into contact with and being exposed to defendants' asbestos products so that plaintiffs, and other persons similarly situated, would nto inhale the asbestos dust and fibers resulting from the ordinary and foreseeable use of said asbestos products;

(j)     failed to adequately test their respective asbestos products before offering them for sale and use so that plaintiffs, and other persons similarly situated, would not inhale the asbestos dust and fibers resulting from the ordinary and foreseeable use of said asbestos products;

(k)     failed to render such asbestos products safe or to provide proper and sufficient safeguards for the use and handling thereof so that plaintiffs, and other persons similarly situated, would not inhale the asbestos dust and fibers resulting from the ordinary and foreseeable use of said asbestos products;

(l)     failed to remove and recall said asbestos products form the stream of commerce and marketplace upon ascertaining that said asbestos products would cause asbestosis,

18

scarred lungs, respiratory disorders, cardiovascular disorders, mesothelioma, lung cancer, other

cancers and other injuries, some of all of which are permanent and may be fatal;

(m)     failed to comply with the Federal Hazardous Substance Act, 15

U.S.C.§1261 et seq;

(n)     failed to advise the plaintiffs, and others similarly situated in the general

community, whom the defendants knew and/or should have and/or could have known had been

exposed to long-term inhalation of the asbestos dust and fibers resulting from the ordinary and

foreseeable use of said asbestos products, to cease all future exposure to the inhalation of all

types of other fumes, smoke, dust tools away from the home environment, to be examined by a

lung specialist to determine the nature and extent of any and all diseases caused by such exposure

an inhalation and to receive treatment for such diseases;

(o)     defendants did or could have joined together in trade associations or

industrial hygiene associations wherein information relative to the hazards of asbestos inhalation

was available, but defendants by their actions, withheld such information from the plaintiffs,

failed to assimilate such information for distribution to the plaintiffs, distorted such information

by watering it down to that sales would not be interfered with, and actively engaged in

disseminating counter information;

(p)     failed to manufacture or design their products so that said asbestos could

or would not be released into the ambient air during their uses;

(q)     failed to advise plaintiffs and other similarly situated who the defendants

knew and/or should have known had been exposed to long-term inhalation of the asbestos dust

and fibers resulting from the ordinary and foreseeable use of said asbestos products, of the progressive nature of the disease process to which all defendants were causing them to be subjected;

(r)     failed to advise plaintiffs and other similarly situated who the defendants knew and/or should have and/or could have known had been exposed to long-term inhalation of the asbestos dust and fibers resulting from the ordinary and foreseeable use of said asbestos products, to cease all future exposure to the inhalation of all types of other fumes, smoke, dust and fibers and to be examined by a lung specialist to determine the nature and extent of any and all diseases cased by such exposure and the inhalation of asbestos dust and fibers and to receive treatment for such diseases;

(s)     were otherwise careless and negligent under the law;

(t)     supervised the installation, repair and restoration of the products designed and intended to contain asbestos and/or supplied replacement asbestos products;

(u)     knew and were warned of the possible hazards of asbestos but chose not to warn.

(v)     supervised installation and repair of their products such as ships or machinery exposing decedent to asbestos.

(w)     supplied replacement or spare products.

## COUNT II - STRICT LIABILITY

22)     Defendants, acting individually, jointly and severally, as part of the conspiracy as alleged

20

herein and/or as a result of tacit agreement or cooperation and/or as a result of industry-wide standards or practice knew, or in the exercise of reasonable care should and/or could have known, that their asbestos products would be sold to the public, including employers of the plaintiffs and other similarly situated, and would be used by plaintiffs, and other persons similarly employed in the general community, and would be relied upon by such persons to be fit for the use and to accomplish the purpose for which they were mined, manufactured, produced, processed, sold, supplied, distributed and/or other wise place in the stream of commerce; and the defendants, because of their positions as miners, manufacturers, producers, processors, sellers, suppliers and distributors, are strictly liable to the plaintiffs, for the following reasons:

(a)     Defendants, as manufacturers-sellers, are engaged in the business, inter alia, of selling asbestos products;

(b)     At the time of the manufacture and sale of the said asbestos products by the defendants to the plaintiffs or plaintiffs' employers, defendants knew, or had reason to know, that the said asbestos products would be used by plaintiffs, and other persons similarly situated, as the ultimate users of consumers;

(c)     The said asbestos products were sold by the defendants in a defective condition, unreasonably dangerous to plaintiffs, and others similarly situated, as users or consumers, and that all throughout the many years of the plaintiffs' and others' similarly situated exposure to and use of the said products, the said asbestos products were expected to and did reach the users or consumers without substantial change in the condition in which they were sold;

(d)     The said asbestos products were defective in that they were incapable of

21

being made safe for their ordinary and intended use and purpose, and those uses believed safe by

the general community, and that defendants failed to give adequate or sufficient warnings or

instructions about the risks, dangers, and harm inherent in said asbestos products;

(e)     The defendants affirmatively misrepresented to plaintiffs and other

members of the public in advertising, labels and otherwise that their asbestos products were safe

in their ordinary and foreseeable use, which material misrepresentation induced plaintiffs and

others to expose themselves to hazards; and

(f)     The ordinary and foreseeable use of the defendants' asbestos products is

an intrinsically dangerous and ultra hazardous activity; and

(g)     The said asbestos products were defective because they contained

asbestos; and

(h)     The said asbestos products were defective because they were defectively

packaged.


## COUNT III- CONSPIRACY TO HIDE THE HAZARDS OF ASBESTOS PURSUANT TO NEGLIGENCE AND PUNITIVE DAMAGES CLAIMS

23)     A number of defendants herein conspired to hide the dangers of asbestos from persons

such as decedent.  This paragraph and paragraphs below describe generally what the conspirators

did.  The remaining paragraphs describe with particularity which companies conspired with

whom and the facts which support a conspiracy claim against the co-conspirators.  Defendants,

individually, jointly, and in conspiracy with each other and with other entities, the identities of

22

which are presently unknown to plaintiffs, and as an industrial group and through trade associations including but not limited to the Air Hygiene Foundation, the Industrial Hygiene Foundation of America, the Industrial Health Foundation, the Asbestos Textile Institute, the Asbestos Information Association, the National Insulation Manufacturers Association, the Thermal Insulation Manufacturers Association, National safety Council the Quebec Asbestos Mining Association, and the Saranac laboratory and state and federal agencies and medical literature since at least the 193's, and continuing to the present, have been possessed of medical and scientific data which clearly indicated that the inhalation of asbestos dust and fibers resulting from the ordinary and foreseeable use of their asbestos products was unreasonably dangerous, ultra hazardous, deleterious, carcinogenic, and potentially deadly.

24)   Despite the medical and scientific data possessed by and available to them, the defendants, acting willfully, maliciously, callously, deliberately, and with wanton disregard for the rights, safety, and position of plaintiffs, and other persons similarly situated, individually, jointly, and in conspiracy with each other and with other entities, the identities of which are presently unknown to plaintiffs, which conduct a conspiracy continues to the present, fraudulently and deliberately:

      (a)   manufactured, sold, distributed, and caused to be used inherently dangerous asbestos products which, through their ordinary and foreseeable use, and unbeknownst to the plaintiffs, and other persons, similarly situated, would result in the serious and severe injuries which plaintiffs have suffered;

      (b)   exposed and continued to expose plaintiffs, and other persons similarly

23

situated, to the risks and dangers of asbestosis, mesothelioma, scarred lungs, cancer and other illnesses all of which risks and dangers defendants or their predecessors knew, should have known or could have known;

      (c)    participated and continue to participate in the fraudulent scheme described above to keep the plaintiffs, and other persons similarly situated in the general community, in ignorance of their rights by fraudulently misrepresenting and concealing the nature and extent of the harm which they suffered as a result of handling, working with, using and being exposed to the defendants' asbestos products and the inhalation of the asbestos dust and fibers resulting from the ordinary and foreseeable use of said asbestos products and, in fact, said fraudulent scheme did keep the plaintiffs, and other similarly situated, in ignorance of their rights;

      (d)    intended by the fraudulent misrepresentations and willful omissions set forth above and below to induce the plaintiffs, and others similarly situated in the general community, to rely upon said fraudulent misrepresentations and willful omissions, and to continue to expose themselves to the risks and dangers that the defendants knew to be inherent in the use of and exposure to their asbestos products and the asbestos dust and fibers resulting from the ordinary and foreseeable use of said asbestos products, without warning the plaintiffs, and other similarly situated, of these risks and dangers, thereby depriving them of the opportunity of informed free choice as to whether to continue to use said asbestos products and to expose themselves to these dangers and risks;

      (e)    withheld or misrepresented the medical conditions of and altered other material and significant medical information on their employees, on other asbestos workers, on

other workers in the construction industry, including plaintiffs, and withheld from or

misrepresented to these workers and their families information about these workers' medical

conditions, concerning, in particular, confirmatory evidence, appearance, suspicion or belief of

asbestos-related diseases or other illnesses;

       (f)     reviewed, altered, distorted and/or caused to this mis-diagnosed medical

records and tests results of their employees or other asbestos workers, for the purpose of

intentionally, fraudulently and maliciously preventing said employees or other workers and their

families, including plaintiffs, from being able to discover the true state of their medical

conditions, or the true state of the medical conditions of other asbestos employees, or workers, or

otherwise treating same;

       (g)     intended and caused their employees and other asbestos workers and their

families, including plaintiffs:

       (i)     to refrain from or lose the ability to file workmen's compensation

or other disability claims for occupational diseases suffered by them by the defendants' seeking

methods to ignore or defeat their claims;

       (ii)     to fail to obtain proper medical care so as to cure, arrest, abate or

otherwise treat their developing or existing asbestos-related disease or other illnesses;

       (iii)     to increase their risk of harm and further aggravate or complicate

developing or existing asbestos related diseases or other illnesses;

       (iv)     to deny them the right to decide or exercise their options to

withdraw from unsafe and deleterious working or household conditions, exposing them to asbestos products, asbestos dust or fibers;

      (v)    to keep them ignorant of their medical conditions, thereby preventing them from taking any safety or precautionary measures available either through their employment or other independent means; and,

      (vi)    to prevent, limit or other wise bar their right to seek recovery of compensatory and/or punitive damage against the defendants for the injuries suffered by them and caused by said defendants;

      (h)    manufactured, sold and distributed asbestos products in such a manner as to camouflage and make indistinguishable, and to conceal the identity, source, and manufacturer and/or distributor of said products for the purpose of misleading and keeping ignorant the users and consumers of same, thereby preventing injured plaintiffs from identifying and suing the proper defendant or defendants;

      (i)    entered into secret re-labeling and distribution agreements, produced products without any labels or distinguishing characteristics, distributed products bearing no identification whatsoever, manufactured and distributed products identical in color, texture and/or appearance, and concealed the sale and/or transfer of corporate assets or entities through "secret" contracts and/or agreements and/or through the continuation of predecessor trademarks, trade names, logos, or labels in successor companies and/or successor products, so as to deceive the ultimate users, including the injured plaintiffs herein, as to the true identity, source, manufacturer and distributor of said hazardous products;

26

(j)      used indistinguishable standardization of products and removal of

trademarks, trade names, markings, logos, labels or other identifying characteristics, in order to

limit and exclude liability from claims brought by person, including the plaintiffs, through the

use and handling of said products and exposure to said asbestos products, asbestos dust and

fibers and also entered into open and considered agreements for the purpose of concealing the

identity and source of asbestos and asbestos products in the marketplace;

(k)      caused to be released, published and disseminated data and/or reports

concerning the dangers and/or safety of their asbestos products, which data and reports they

knew, should have known, or could have reasonable determined to be incorrect, incomplete,

outdated and misleading;

(l)      failed and refused to provide th public, or workers such as plaintiffs who

would foreseeable use and/or be exposed to their products and to the inhalation of the asbestos

dust and fibers resulting from the ordinary and foreseeable use of said asbestos products, with

any warning, as to the risks, dangers, and harm that the defendants knew, or should have known,

or could have known to be inherent in the use of and exposure to said asbestos products and to

the inhalation of asbestos dust and fibers in the ordinary and foreseeable use of said products

fearing that adequate and proper warnings would adversely affect sales;

(m)      deliberately chose to provide patently inadequate and ambiguous warnings

and intentionally failed to warn of the known risks and dangers of their asbestos products and the

inhalation of asbestos dust and fibers resulting from the ordinary and foreseeable use of said

products fearing that adequate and proper warning would adversely affect sales;

27

(n)     refused and failed to meaningfully test their asbestos products regarding the risks and dangers to persons who use or were exposed to their asbestos products and that inhalation of the asbestos dust and fibers resulting from the ordinary and foreseeable use of said asbestos products;

(o)     when the aforesaid asbestos products were tested they willfully concealed and or refused to publish adverse tests results, or distorted said adverse tests results so that the public and persons such as plaintiffs were misled into believing that the test results were not adverse and that their asbestos products were safe for their ordinary and foreseeable use;

(p)     ignored medical and scientific data which demonstrated a causal connection between asbestos exposure and asbestosis, cancer, and mesothelioma, or other diseases, or which discussed the risk of those diseases from asbestos exposure;

(q)     attempted to discredit scientists, doctors, writers, and medical literature who or which indicated, demonstrated, or established a causal connection between asbestos and asbestos related diseases;

(r)     sought to create favorable publicity about the safe nature of their asbestos products for pecuniary motives when they knew of the risks and danger inherent in their asbestos products;

(s)     failed to seek safe substitute products for their asbestos products because pecuniary motives of profit were followed at the expense of human lives;

(t)     ignored, withheld and/or actively concealed the existence of tests, data,

28

26)     Defendants knew or could have learned of the hazards of asbestos from the suppliers of asbestos used by them and from their membership in the Industrial Hygiene Foundation, the National Safety Council and other entities.

27)     Defendants American Premier, BAE and Union Carbide or their predecessors knew could have known and should have known of the hazards of asbestos.

28)     Despite this knowledge defendants failed to warn.

## GENERAL NEGLIGENCE AND PUNITIVE DAMAGES ALLEGATIONS

29)     Defendants were in a position to know what the suppliers such as Johns-Manville, Westinghouse, Bendis, GE, Abex and General Motors knew about the hazards of asbestos and their efforts to cover up that knowledge.

30)     These entities knew about the hazards of asbestos as can be demonstrated through the correspondence between Anthony Lanza, writing on GM's letter head co-conspirators while employed by Metropolitan Life to Bendix employees about asbestos hazards and the various activities of Lanza.

31)     Lanza and Saranac Labs also worked for Johns-Manville and Raybestos-Manhattan and Abex discussing the hazards of asbestos and communicating those results and findings to each other.

32)     Lanza, while with GM, was also being paid by Metropolitan Life.

33)     In that position Lanza and Manville, Abex, Raybestos and Met Life colluded to keep the knowledge of the hazards of asbestos from the public and this conspiracy persists today.   34)

30

Defendants were privy to or able to know of the knowledge and actions of the other conspirators by their  membership in the National Safety Council and Industrial Hygiene Foundation (IHF).

35)     It is believed and therefore averred that Defendants through the Society of Automotive Engineers (SAE) and through memberships in other organizations knew of what Abex, Bendix, Raybestos, General Electric, Manville and General Motors knew of the hazards of asbestos yet intentionally failed to warn of those hazards as part of the conspiracy.

36)     At the same time the National Safety Council (NSC) began to study the hazards of asbestos and published articles for its members on that subject.

37)     Since Manville, General Motors, General Electric, Bendix, Abex, Raybestos and Defendants abetted the conspiracy into the 1990's or later by not warning until forced to do so.

38)     Bendix, Abex, Manville and Raybestos and other IHF members all supplied asbestos for starting in the 1930's.  What they knew or were doing to keep knowledge of the hazards of asbestos from the public from the 1930's until today other defendants knew or abetted.

39)     In 1946, GM published a paper in the National Safety Council News warning that levels of asbestos in excess of 5 million particles per cubic foot would cause asbestosis.  Through the NSC the other co-conspirators knew that this level would not protect from cancer.  Throughout the 1930-1980 period GM, Abex, Chrysler, Bendix, Firestone, conducted studies on the levels of asbestos released from brake linings.  Ford had to know of these results yet chose not to warn.

40)     Throughout the years Defendants refused to warn until after the Decedent left the Navy.

31

41)    Throughout the years 1932-1960 Lanza both through work with Met Life and Manville sought to suppress the knowledge of the hazards in conjunction with the suppliers of and competitors to the engines and aircraft manufacturers which knew of the activities of the other companies and joined in the conspiracy.

42)    Defendants had access to Industrial Hygiene Foundation (IHF) collection and discrimination of articles on the hazards of asbestos as early as 1965.

43)    Subsequent tests sponsored by the IHF and government and many confirmed that high levels of asbestos were emitted in the manufacture of asbestos both for aircraft and engines.

44)    The National Safety Council was formed in the 1930's by a number of defendants herein such as but not limited to General Electric, Ingersoll and Westinghouse.

45)    A number of the other defendants in this action and became members of the National Safety Council at later times and thus could have learned of the hazards of asbestos.

46)    The National Safety Council had published articles to its members throughout the 1930's and 1940's on the dangers of asbestos products including asbestos brake linings and other products.

47)    In the meanwhile the state of Pennsylvania was publishing papers on the hazards of asbestos including one by General Electric on the hazards of "asbestos fly", i.e. asbestos released into the air by the handling of asbestos products.  The papers were distributed to employers in Pennsylvania in 1930's and throughout the 1950's and 1960's and 1970's putting on notice

defendants such as but not limited to, GE and Westinghouse which had plants using asbestos in Pennsylvania of the hazards of asbestos products.

48)     Throughout the 1930's and 1940's Abex and Johns-Manville were embarked on studies of the hazards of asbestos which revealed asbestos hazards through Saranac Lab.

49)     Manville supplied many of the asbestos products used by defendants in their products and thus would have been or was potential or actual source of information on the hazards of asbestos yet defendants failed to investigate, warn or protect.

50)     Other states including California determined that asbestos was hazardous.

51)     The too numerous articles to list here reviewed by Dr. Barry Castleman in his book Asbestos Medical and Legal Aspects and by Dr. Arthur Frank in his affidavit well known to defendants and discussed by Dr. Frank in Chapter 1 of the book Asbestos Risk Assessment, Epidemiology and Health Effects edited by Dodson and Hammar show that it was well known to experts such as defendants that asbestos was hazardous yet they failed to warn and protect.

52)     The studies by Dr. Hueper in the 1930's and Dr. Selikoff in the 1960's and 1970's has long demonstrated prior to decedent's employment that asbestos could cause lung cancer.  Defendants still failed to warn of the hazards of asbestos or design their products so asbestos would not be released.

53)     Even the adoption of asbestos standards under the Occupational and Safety Health Act in 1972 did not induce defendants to provide warnings or adequate warnings despite their obligations under binding Navy regulations.

33

54)     Despite explicit Navy requirements that suppliers provide warnings of the hazards of any product supplied to the Navy under state or federal standards defendants intentionally refused to warn or design the products to be safe in blatant disregard of binding Navy requirements.

55)     Despite the fact that the Navy did not require asbestos but required only products that conformed to the Navy's needs defendants chose to use asbestos when they could have chosen alternatives and chose not to warn or design the products not to contain asbestos or to not release asbestos fibers.

56)     Firestone, Goodrich and Goodyear had been present at the All Ohio Safety Conference sponsored by the state of Ohio in 1938 on the hazards of pneumoconiosis and asbestosis and thus knew of the hazards of asbestos.

57)     Firestone had been testing asbestos levels in its asbestos brake lining plant since the 1940's and found levels as 100 particles per cubic foot at a time when the standard was 5 particles and yet never warned.

58)     Westinghouse was publishing internal documents in the 1940's that it failed to disclose to the public which discussed the hazards of asbestos.

59)     In these documents from its Lester, PA facility and other alter facilities Westinghouse warned internal but not external users that handling asbestos products for turbines posed a health hazard.  As this case involves engines and electrical products for ships as well Westinghouse should have warned but intentionally did not warn.

60)     In the 1930's General Electric had already discovered asbestosis cases in its plant at 30th

34

and Walnut in Philadelphia and had published a paper in a state of Pennsylvania published newsletters on the hazards of "asbestos fly" in the manufacture and use of asbestos wire in its York PA plant.

61)    Meanwhile GE was selling large quantities of asbestos-containing wire and asbestos-containing material for turbines, generators and other equipment.

62)    The President of General Electric personally retained the services of an occupational medicine physician and was in regular communication with her on the hazards of asbestos in the 1930's.

63)    By the 1950's GE employees were publishing on the hazards of asbestos for defendants and experts and GE was receiving Workers Compensation claims for asbestos disease.

## LAW APPLICABLE TO THIS ACTION

64)    Prior rulings of This Court have determined that martitime law applies to those portions of the asbestos exposure which occurred on board the ships at sea and that Pennsylvania law would apply to those exposures which occurred on land at the Philadelphia Naval ship yard.

65)    Plaintiff contends that Pennsylvania law applies to the entire matter.

66)    The case was removed on the basis of an asserted federal defense to a state law claim.

67)    However, the Court erred in its prior rulings due to 28 USC§1333.

68)    This statute preserves to suitors all remedies to which they are otherwise entitled.

69)    That provision has been generally interpreted not to preclude the continued validity of the

35

state law claims. *Robinson v. Alter Barge* 513 F.3d 668 (7th Cir 2008), *Newton v. Shipman* 718 F.2d 959 (9th Cir 1983), *Roth v. Cox* 210 F.2d 76 (5th Cir 1956).

70)      The Third Circuit held in *Jordine v. Walling* 185 F.2d 662 (3rd Cir 1950) that in the absence of diversity 28 USC§1333 did not confer jurisdiction on the federal courts, also see *Walker v. Dravo* 210 F.Supp 386 (WD PA 1962), *Pacific Far East v. Ogden* 425 F.Supp 1239 (USDCND Ca 1977).

71)      Under *Madruga v. Superior Court of California* 346 US 556 (1954),*C.J. Hendry v. Moore* 318 US 133 (1943) and suits against persons rather than ships can be brought in state Court.

72)      While the defense of Government Contractors may provide a basis for removal, the case remains a state court action.

73)      The Court's prior rulings in other case that removal eliminates the state Court claims is thus in error.

74)      The prior ruling that maritime law, not Pennsylvania law applies is thus in error.  If maritime law is applicable both negligence and strict liability and punitive damages claims are being possesed

75)      Thus, there was not need to Order Amendment of the Complaint as the removed complaint was adequate.

## **DAMAGES**

76)      As a direct and proximate result of the negligence, carelessness, gross negligence, willful

36

misconduct, strict liability, fraudulent concealment, conspiracy, misrepresentation, willful

omissions, recklessness and outrageous conduct of the defendants as described supra, plaintiff's

decedent was caused to contract Lung Cancer and injuries from exposure to their asbestos

containing products.  As a direct and proximate result of the aforesaid, decedent was obliged to

spend various sums of money to treat his disease and injuries and plaintiff continues to be

obliged for expenses of same; as a direct and proximate result of the aforesaid, decedent has

sustained a loss of earnings and earning capacity, loss of social security and other benefits; and as

a direct and proximate result of the aforesaid, plaintiffs' enjoyment of life has been impaired and

plaintiff's life expectancies shortened, all to plaintiff's great loss.

77)     As a direct and proximate result of the aforesaid, decedent and decedent has under gone

great physical pain, mental anguish, and shock of the nervous system.

78)     As a direct and approximate result of the aforesaid, plaintiff first learned of his injuries,

plaintiff has developed severe anxiety, hysteria or phobias, any or all of which have developed

into a reasonable and traumatic fear of an increased risk of additional asbestos caused and/or

related disease, including, but not limited, cancer, resulting from exposure, directly and

indirectly, to the asbestos products of the defendants and to their conduct with those products.

79)     As a direct and proximate result of the aforesaid, plaintiff and decedenthas and will

continue to suffer permanent and ongoing psychological damage which may require future

psychological and/or medical treatment.

80)     As a direct and proximate result of the aforesaid, plaintiffs have and will continue to

suffer a disintegration and deterioration of the family unit and the relationships existing therein,

37

resulting in enhanced anguish, depression and other symptoms of psychological stress and disorder.

81)     Plaintiff  lost large sums on death of decedent in lost pension and social security income as well as loss of decedent's services and society ro consortium.

82)     Plaintiff seeks punitive damages as well.

**WHEREFORE,** Plaintiffs pray for judgment against the defendants and each of them individually, jointly and severally on each of the above counts, for compensatory damages in an amount in excess of ONE HUNDRED THOUSAND DOLLARS ($100,000.00) and punitive damages in a sum in excess of ONE HUNDRED THOUSAND DOLLARS ($100,000.00) plus costs of suit, and such other and further relief as is just and proper.

PAUL, REICH & MYERS, P.C.

BY: _____

ROBERT E. PAUL

38

## VERIFICATION

I hereby certify that I am a Plaintiff in the instant matter and the facts contained herein are true and correct to the best of my knowledge, information and belief.  This statement is made subject to the penalties of 18 Pa. C.S. § 4904 relating to unsworn falsification to authorities.

JACKIE L. SULLIVAN