IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: ASBESTOS PRODUCTS | : | Consolidated Under |
| LIABILITY LITIGATION (No. VI) | : | MDL DOCKET NO. 875 |
| | : | |
| | : | |
| JACKIE L. SULLIVAN, | : | Case No. 18-3622 |
| Executrix of The Estate of | : | |
| JOHN L. SULLIVAN, Deceased, | : | |
| and Widow in Her Own Right | : | |
| | : | |
| v. | : | |
| | : | |
| A. W. CHESTERTON, INC., et al. | : | |

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                    June 6, 2019

Before the Court is the motion to dismiss filed by

Defendant Huntington Ingalls Incorporated ("HIC"). The Court

will grant the motion as it concludes that it lacks personal

jurisdiction over HIC.

In 2014, the Supreme Court decided the case of Daimler

AG v. Bauman[1] which brought about a sea change in the

jurisprudence of exercising general personal jurisdiction over a

foreign corporation. Daimler held that under the Due Process

Clause, subjecting a foreign corporation to general jurisdiction

in every state in which it "engages in a substantial,

continuous, and systematic course of business" was "unacceptably

_____

[1]      571 U.S. 117 (2014).

grasping." Under _Daimler_, the exercise of general jurisdiction over a foreign defendant (except in extraordinary circumstances) was limited to where the corporation was "at home," namely, the forums in which the foreign corporation is incorporated and where it maintains its principal place of business.

Pennsylvania has long had a statute which requires a foreign corporation wishing to do business in Pennsylvania to register in Pennsylvania. Correspondingly, Pennsylvania law provides that such registration constitutes a sufficient basis for the exercise of general personal jurisdiction over the foreign corporation.

Federal and state courts in Pennsylvania have struggled to divine the applicability of _Daimler_ to the Pennsylvania registration scheme with mixed results. Building on that jurisprudence, this Court concludes that: (1) the Pennsylvania statutory scheme that requires foreign corporations to register to do business and, therefore, to consent to general personal jurisdiction in Pennsylvania, offends the Due Process Clause and is unconstitutional; and (2) the Third Circuit's pre-_Daimler_ decision in _Bane v. Netlink, Inc._,[2] finding that, by registering to do business in Pennsylvania, a foreign corporation consents to general personal jurisdiction, is

---

[2]     925 F.2d 637 (3d Cir. 1991).

irretrievably irreconcilable with the teachings of <u>Daimler</u>, and can no longer stand.

## I.    FACTS AND PROCEDURAL HISTORY

Plaintiff Jackie Sullivan brought this asbestos personal injury action against 48 Defendants in the Philadelphia Court of Common Pleas on July 25, 2018. She alleges that decedent John Sullivan was exposed to asbestos during his Naval service from October 1967 through January 1980. Plaintiff further alleges that this asbestos exposure caused Sullivan to develop lung cancer which ultimately led to his death. HIC removed the action on August 22, 2018 pursuant to the Federal Officer Removal Statute, 28 U.S.C § 1442.[3]

Regarding the allegations against HIC, Plaintiff alleges that in 1973, Sullivan was assigned to the U.S.S. Blakely while serving in the Navy as a machinist mate. Plaintiff further contends that an alleged predecessor of HIC, Avondale Shipyard, built the Blakely in Westwego, Louisiana and "designed its ship to contain asbestos and despite the ability to know of and warn of the hazards of asbestos failed to do so." Am. Compl. 8-9 (ECF No. 100). It is undisputed that Sullivan's alleged asbestos exposure aboard the Blakely did not occur in

---

[3]    This statute allows government contractor defendants like HIC to remove an action from state court on the theory that it acted under the direction of an officer of the United States. 28 U.S.C. 1442(a)(1).

Pennsylvania.[4] Most importantly for the purposes of this case, HIC is incorporated and has its principal place of business in Virginia, not in Pennsylvania. Plaintiff is also a citizen of Virginia.

## II.   LEGAL STANDARD

Under Fed. R. Civ. P. 12(b)(2), in response to a complaint, a defendant may assert as a defense that the court lacks personal jurisdiction over it. When a defendant raises this defense, "the burden falls upon the plaintiff to come forward with sufficient facts to establish that jurisdiction is proper." Mellon Bank (E.) PSFS, Nat'l Ass'n v. Farino, 960 F.2d 1217, 1223 (3d Cir. 1992) (citing Carteret Sav. Bank v. Shushan, 954 F.2d 141, 146 (3d Cir. 1992)). However, when reviewing such a motion, the court "must accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff." Carteret Sav. Bank, 954 F.2d at 142 n.1. "Personal jurisdiction [ ] is 'an essential element of the jurisdiction of a district . . . court,' without which the court is 'powerless to proceed to an adjudication.'" Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 584 (1999) (quoting Emp'rs Reinsurance Corp. v. Bryant, 299 U.S. 374, 382 (1937)).

---

[4]      While Plaintiff does allege that Sullivan was exposed to asbestos in Pennsylvania, it was not asbestos for which HIC could be responsible.

## III. DISCUSSION

### A. The Pennsylvania Business Registration Statutory Scheme and Federal Due Process Guarantees

Plaintiff contends that this Court has general personal jurisdiction over HIC pursuant to 15 Pa.C.S. § 411 and 42 Pa.C.S. § 5301 because HIC and its alleged predecessors registered to do business in Pennsylvania at various points of time.[5] Section 411 provides in relevant part that a foreign corporation "may not do business in this Commonwealth until it registers with the department." 15 Pa.C.S. § 411(a). If a foreign corporation does business in the state without registering, as a penalty, it "may not maintain an action or proceeding in" the state. 15 Pa.C.S. § 411(b). Section 5301

---

[5] The modern notion of personal jurisdiction comes in two flavors: specific and general jurisdiction. Specific jurisdiction exists when the underlying controversy arises from actions taken in the forum. Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011). General, or all-purpose, jurisdiction flows, not from any facts germane to the case, but from the fact that the defendant is "at home" generally in the forum. Id. at 924. A party may waive a challenge, or consent, to personal jurisdiction. In this case, Plaintiff does not seriously assert that the Court has specific jurisdiction over HIC or general jurisdiction based on HIC being "at home" in Pennsylvania. Plaintiff argues that HIC consented to general jurisdiction pursuant to Section 411 and Section 5301.

The parties argue whether the various companies are, in fact, predecessors of HIC, whether HIC would be liable for its predecessors' actions, and the effect of the timing of HIC's registration on its liability. Given the Court's holdings in this case, the Court concludes that these issues are immaterial.

provides in relevant part that registration as a foreign corporation in Pennsylvania "shall constitute a sufficient basis of jurisdiction to enable the tribunals of this Commonwealth to exercise general personal jurisdiction over such" entities. 42 Pa.C.S. § 5301(a)(2)(i). Read together, these two statutes provide that, the state will only permit a foreign corporation to "do business" in Pennsylvania if it registers and, thus, subjects itself to general personal jurisdiction. The Court will refer to the interplay of these two statutes as the "Pa. Statutory Scheme."

The concept of due process is deeply rooted in our judicial system, having been imported from England as an essential bulwark against arbitrary deprivations by the crown. See, e.g., Davidson v. City of New Orleans, 96 U.S. 97, 101 (1877). Under the Fifth and Fourteenth Amendments, the government, whether federal or state, may not deprive individuals of "life, liberty, or property" without "due process of law." U.S. Const. amend. V & amend. XIV. It has long been recognized that corporations have juridical personalities and are entitled to due process protections. See Missouri Pac. Ry. Co. v. Mackey, 127 U.S. 205, 209 (1888) (citing Santa Clara Cty. v. S. Pac. R. Co., 118 U.S. 394 (1886)).

The Pa. Statutory Scheme has serious due process implications and its continued implementation raises two

6

questions that this Court must address: (1) is the Pa. Statutory Scheme constitutional after <u>Daimler</u>, 571 U.S. 117; and, if not, (2) must this Court follow the Third Circuit's holding in <u>Bane</u>, 925 F.2d 637, that a foreign corporation consents to jurisdiction by registering under the Pa. Statutory Scheme?

**B.    The Applicable Law**

In order to determine whether this Court may exercise personal jurisdiction over HIC, it must first analyze two questions: (1) whether Pennsylvania's long-arm statute provides for the exercise of long-arm jurisdiction, and, if so; (2) whether the exercise of long-arm jurisdiction in this case satisfies the requirements of the Due Process Clause of the Constitution. <u>IMO Indus., Inc. v. Kiekert AG</u>, 155 F.3d 254, 258-59 (3d Cir. 1998). Pennsylvania's long-arm statute first lists discrete actions performed in-state that create personal jurisdiction including transacting various types of business, entering into contracts, causing harm, owning real property, taking various appointments, applying for licences, and violating laws. 42 Pa.C.S § 5322(a).

In addition to these specific instances, the statute also provides that "the jurisdiction of the tribunals of this Commonwealth shall extend . . . to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed under

the Constitution of the United States." 42 Pa.C.S § 5322(b). It is with this second section of the long-arm statute that the Court is concerned as the specific acts listed in Section 5322(a) are not implicated.

Because Section 5322(b) of Pennsylvania's long-arm statute is coextensive with the Due Process Clause, the Court need only analyze whether jurisdiction is proper under federal Fourteenth Amendment jurisprudence. See Daimler, 571 U.S. at 125 (providing that "[f]ederal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons" but that when a state long-arm statute is co-extensive with the Constitution, the court should inquire whether finding personal jurisdiction "comports with the limits imposed by federal due process"); Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prods. Co., 75 F.3d 147, 150 (3d Cir. 1996) (providing that because the reach of Section 5322(b) "is coextensive with the limits placed on the states by the federal Constitution," courts "look to federal constitutional doctrine to determine [a defendant's] susceptibility to personal jurisdiction in Pennsylvania").

In Daimler, the Supreme Court reiterated that exercising general personal jurisdiction over a foreign corporation comports with due process only "when the corporation's affiliations with the State in which suit is

brought are so constant and pervasive 'as to render [it] essentially at home in the forum State.'" 571 U.S. at 122 (quoting Goodyear, 564 U.S. at 919). Daimler clarified that, absent exceptional circumstances, a corporation is only "at home" where it is incorporated and where it has its principal place of business. Id. at 137 & 139 n.19. The Court concluded that subjecting a corporation to general jurisdiction in every state where it "engages in a substantial, continuous, and systematic course of business" would be "unacceptably grasping." Id. at 138 (internal quotation marks omitted).

To put the reach of Daimler in context, it is important to understand how it radically shifted the legal landscape regarding the application of general personal jurisdiction. In 1945, the Supreme Court in International Shoe,[6] departed from earlier territorial notions of personal jurisdiction which had long been the norm under Pennoyer,[7] and generally approved of a court's exercise of general personal jurisdiction over any foreign corporation which had substantial business activities within its jurisdictional boundaries. Int'l

---

[6]      Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement, 326 U.S. 310 (1945).

[7]      Pennoyer v. Neff, 95 U.S. 714 (1877). In Pennoyer, the Supreme Court explained that a state court could only exercise personal jurisdiction over parties that were served with process while physically present within the borders of its jurisdiction. Id. at 722.

Shoe, 326 U.S. at 318.

Thereafter, the Supreme Court solidified this concept in two additional cases, finding that a foreign corporation's "continuous and systematic general business contacts" in a state could allow its courts to exercise general personal jurisdiction over the corporation. Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 416 (1984); Perkins v. Benguet Consol. Mining Co., 342 U.S. 437, 445 (1952). This approach to the exercise of general personal jurisdiction continued and was further refined but remained problematic since the general jurisdiction analysis became exceedingly fact specific and idiosyncratically applied. As a result, it was difficult for national corporations to divine where they might be haled into court, and – depending on the extent of their business operations – such corporations could be subject to general jurisdiction in virtually every state, regardless of any connection between the suit and the state. See Tanya J. Monestier, Registration Statutes, General Jurisdiction, and the Fallacy of Consent, 36 Cardozo L. Rev. 1352-54 (2015).

In 2011, the Supreme Court retracted from this business contacts-based general jurisdictional analysis in Goodyear, defining to an extent the difference between specific and general jurisdiction. The Court held that a foreign corporation is subject to general personal jurisdiction only

where it "is fairly regarded as at home." 564 U.S. at 924. Just three years later, and following the lead of Goodyear, the Supreme Court elaborated in Daimler that a corporation is typically "at home" in only two places: its state of incorporation and the state in which it has its principal place of business. 571 U.S. at 137 & 139 n.19. Thus, regarding the application of general personal jurisdiction over a foreign corporation, Daimler completed the turn away from International Shoe's factual analysis of substantial contacts in favor of a fairly straight forward bright-line test.

**C.  The Constitutionality of Pennsylvania's Statutory Scheme in Light of Daimler**

Now that the Supreme Court has found that a foreign corporation's "substantial, continuous, and systematic" course of business in a state cannot be the basis for general personal jurisdiction, plaintiffs are increasingly reliant on business registration statutes such as the Pa. Statutory Scheme to attempt to establish general personal jurisdiction over a foreign corporation. This case is on point since: (1) HIC is neither incorporated in nor does it have its principal place of business in Pennsylvania; (2) Plaintiff does not allege any exceptional circumstances; and (3) none of the alleged exposure attributable to HIC occurred in Pennsylvania. Therefore, Plaintiff must turn to the Pa. Statutory Scheme in order to save

her assertion of personal jurisdiction over HIC. Specially, Plaintiff contends that, while HIC is not necessarily "at home" in Pennsylvania, HIC or its alleged predecessors consented to general jurisdiction when they registered to do business in the state pursuant to the Pa. Statutory Scheme.

Daimler did not concern consent under a registration regime nor did it disturb absolutely a party's ability to consent to general personal jurisdiction under certain circumstances. See Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 703-04 (1982) (discussing waiver of personal jurisdiction by consent). Rather, the relevant question here after Daimler is a narrow one: does a foreign corporation knowingly and voluntarily consent to general jurisdiction in a state by registering to do business under a statutory regime that conditions the right to do business on the waiver of general jurisdiction?

It is axiomatic, and none of the cases discussing this issue dispute, that consent is only valid if it is given both knowingly and voluntarily. The issue is whether this sort of mandatory registration scheme which conditions the ability to do business in a particular state on consent to general personal jurisdiction satisfies these two requirements.

Most courts that have confronted the issue have determined that their state registration statutes do not imply

12

consent to general jurisdiction because, inter alia, the language of the statutes are not explicit in this regard. These courts hold that, at a minimum, any consent to general personal jurisdiction cannot be implied from the mere act of registration, and therefore, the purported consent is not knowingly given.

The Pa. Statutory Scheme, on the other hand, is unique in that it provides explicitly that by the act of registering to do business in Pennsylvania, the foreign corporation consents to general jurisdiction. Thus, the statutory consent is arguably given knowingly under the Pa. Statutory Scheme in that it is expressly provided for in Section 5301. The question is, in light of the mandatory nature of registration to do business in Pennsylvania, whether the consent to general jurisdiction is voluntary. Below, the Court discusses both registration statutes generally and the Pa. Statutory Scheme specifically, and describes why such schemes do not comport with due process after Daimler.

> **1.  Are Registration Statutes that Extract Consent to General Jurisdiction in Exchange for the Ability to do Business Unconstitutional?**

All states have business registration statutes that premise the ability of a foreign corporation to conduct business therein without penalty on its registration and appointment of an agent for service of process. See, e.g., Brown v. Lockheed

Martin Corp., 814 F.3d 619, 640 (2d Cir. 2016); Monestier, supra at 1345. These statutes typically share a common penalty for failure to register as well: the inability to maintain an action in that state's courts (or an action in the federal court based on diversity jurisdiction). See, e.g., Statutes expressly barring action by unlicensed corporations, 8 Williston on Contracts § 19:65 (4th ed.).

The original force behind business registration statutes is now archaic and moot. In the mid-nineteenth century, corporations were considered to exist only where they were incorporated. See Charles W. "Rocky" Rhodes, Nineteenth Century Personal Jurisdiction Doctrine in A Twenty-First Century World, 64 Fla. L. Rev. 387, 436 (2012). As a result, under the jurisdictional rubric established in Pennoyer, corporations could not be haled into foreign courts, even for claims that arose in the forum, because they could not physically be served there. Brown, 814 F.3d at 631. So that states could protect their citizens from corporate injury in their jurisdiction, state legislatures began enacting registration statutes codifying the principle that the state could require foreign corporations "to appoint an in-state agent for service of process and to consent to jurisdiction for claims related to its forum business in return for the privilege of conducting in-state business." Rhodes, supra at 442.

As noted by the Second Circuit:

> A corporation's "consent" through registration has thus
> always been something of a fiction, born of the necessity
> of exercising jurisdiction over corporations outside of
> their state of incorporation: Consent was perhaps more
> of a promise, fairly extracted, to appear in state court
> on actions by a state's citizens arising from the
> corporation's operations in the jurisdiction.

Brown, 814 F.3d at 633. Therefore, such statutory regimes were

initially intended to create only specific jurisdiction over

foreign corporations, not general jurisdiction. Indeed, most

courts confronted with the issue have concluded that these

statutes do not imply consent to general jurisdiction.

For example, in Brown, the Second Circuit concluded

that:

> If mere registration and the accompanying appointment of
> an in-state agent - without an express consent to general
> jurisdiction - nonetheless sufficed to confer general
> jurisdiction by implicit consent, every corporation
> would be subject to general jurisdiction in every state
> in which it registered, and Daimler's ruling would be
> robbed of meaning by a back-door thief.

Id. at 640. The Second Circuit distinguished Pennsylvania's

Statutory Scheme on the grounds that, unlike the Connecticut

registration statute at issue there, Section 5301 includes clear

language regarding jurisdiction. Id. at 637. However, the court

concluded that even with express language "[t]he reach of [a

state's] coercive power, even when exercised pursuant to a

corporation's purported 'consent,' may be limited by the Due

Process clause." Id. at 641. Given that the language of

15

Connecticut's statute did not provide for express consent, the court did not need to reach that issue. Id.

Similarly, in Genuine Parts Co. v. Cepec, 137 A.3d 123 (Del. 2016), the Delaware Supreme Court overruled its prior precedent interpreting Delaware's registration statute as conferring general personal jurisdiction over registrants. 137 A.3d at 139-42. The court recognized that, should forced statutory consent to general jurisdiction via registration be deemed constitutional, Daimler would be eviscerated as more states began adopting a similar interpretation. The court held that:

> If all of our sister states were to exercise general jurisdiction over our many corporate citizens, who often as a practical matter must operate in all fifty states and worldwide to compete, that would be inefficient and reduce legal certainty for businesses. Human experience shows that "grasping" behavior by one, can lead to grasping behavior by everyone, to the collective detriment of the common good. It is one thing for every state to be able to exercise personal jurisdiction in situations when corporations face causes of action arising out of specific contacts in those states; it is another for every major corporation to be subject to the general jurisdiction of all fifty states.

Id. at 143 (footnotes omitted). Similarly, should the explicit Pa. Statutory Scheme be deemed constitutional, other states would only need to add language to their registration statutes spelling out the jurisdictional consequences of registering to do business, while at the same time giving no real alternative to registration.

Recognizing the sea change in personal jurisdiction brought about by Daimler and Goodyear, the Delaware Supreme Court found that Delaware's registration statute could not be read to force jurisdictional consent but instead would have to be interpreted so as not to offend the Due Process Clause. Id. at 127. It explained that:

> An incentive scheme where every state can claim general jurisdiction over every business that does any business within its borders for any claim would reduce the certainty of the law and subject businesses to capricious litigation treatment as a cost of operating on a national scale or entering any state's market.

Id. at 127-28 (footnotes omitted).[8]

---

[8] Two years previously, the United States District Court for the District of Delaware had predicted this result concluding that, while Daimler did not concern the issue of consent by registration, its overall message encompassed the issue. The Delaware District Court held that because "[b]oth consent and minimum contacts (and all questions regarding personal jurisdiction) are rooted in due process," and "[j]ust as minimum contacts must be present so as not to offend 'traditional notions of fair play and substantial justice,' the defendant's alleged 'consent' to jurisdiction must do the same." AstraZeneca AB v. Mylan Pharm., Inc., 72 F. Supp. 3d 549, 556 (D. Del. 2014) (Sleet, J.) (citing Int'l Shoe, 326 U.S. at 316), aff'd sub nom. Acorda Therapeutics Inc. v. Mylan Pharm. Inc., 817 F.3d 755 (Fed. Cir. 2016). The court continued that:

> The Supreme Court's discussion of due process in Daimler, therefore, informs the court's [consent] analysis here. In holding that "continuous and systematic contacts" alone are insufficient to establish general jurisdiction, the Supreme Court rejected the idea that a company could be haled into court merely for "doing business" in a state.

Id. at 556 (quoting Daimler, 571 U.S. at 138). The court concluded that "[i]n light of the holding in Daimler, the court

This Court agrees with the holdings in these cases that a mandatory statutory regime purporting to confer consent to general jurisdiction in exchange for the ability to legally do business in a state is contrary to the rule in _Daimler_ and, therefore, can no longer stand.[9]

**2. Is the Pa. Statutory Scheme Saved by the Explicit Nature of the Consent?**

The Pa. Statutory Scheme, however, goes a step further than other states' registration statutes in that it explicitly informs that registering to do business constitutes a sufficient basis for the exercise of general personal jurisdiction.

Nonetheless, the Pa. Statutory Scheme presents a foreign corporation with a Hobson's choice: consent to general personal jurisdiction or be denied the benefits of doing business in Pennsylvania.[10] To put it another way, the Pa. Statutory Scheme conditions the benefit of certain privileges of

---

finds that [defendant's] compliance with Delaware's registration statutes – mandatory for doing business within the state – cannot constitute consent to jurisdiction. . . ." _Id._

[9] As described below, the reasoning of these cases applies equally to the Pa. Statutory Scheme.

[10] Specifically, in that the Pa. Statutory Scheme requires foreign corporations to register, a non-registering foreign corporation can either not do business in the state or do business illegally without the protection of the court system. This Court concludes that the choice of doing business illegal is no more of a choice than not doing business in the state at all.

doing business in Pennsylvania upon the surrender of the constitutional right, recognized in Daimler, to be subject to general personal jurisdiction only where the corporation is "at home." In that the Pa. Statutory Scheme is explicit, the Court must ask whether the purported statutory consent to personal jurisdiction, even if knowingly given (the first prong), is voluntary (the second prong), and thus, comports with due process.

As a general principle, the Supreme Court has recognized that the state cannot condition a benefit generally available to others in the state on the surrender of a constitutional right. Koontz v. St. Johns River Water Mgmt. Dist., 570 U.S. 595, 604, 606 (2013) (holding that the court could not condition the grant of land use permits upon the applicant's funding of offsite mitigation projects on public land); see Frost v. R.R. Comm'n of State of Cal., 271 U.S. 583, 593 (1926) (holding that the state violated, inter alia, the due process rights of a private trucking company by conditioning the use of its highways on the acceptance of all of the duties and burdens placed on a common carrier; concluding that "[i]t would be a palpable incongruity to strike down an act of state legislation which, by words of express divestment, seeks to strip the citizen of rights guaranteed by the federal Constitution, but to uphold an act by which the same result is

accomplished under the guise of a surrender of a right in exchange for a valuable privilege which the state threatens otherwise to withhold"); cf. Bendix Autolite Corp. v. Midwesco Enters., Inc., 486 U.S. 888, 893-94 (1988) (concluding under similar facts that Ohio violated the Commerce Clause by enacting a statute requiring foreign corporations to register to do business and subject themselves to general personal jurisdiction in order to gain the due process protections afforded by statute of limitation defenses and holding that a state "may not condition the exercise of the defense on the waiver or relinquishment of rights that the foreign corporation would otherwise retain").

    This principle finds a home in the unconstitutional conditions doctrine. While the unconstitutional conditions doctrine most often is saluted in First and Fifth Amendment cases, "the logical foundation of the unconstitutional conditions doctrine applies with equal force in any case in which the enjoyment of a government-sponsored benefit is conditioned upon a person's nonassertion of any constitutional right." Wojtczak v. Cuyler, 480 F. Supp. 1288, 1306 (E.D. Pa. 1979) (citing William W. Van Alstyne, The Demise of the Right-Privilege Distinction in Constitutional Law, 81 Harv. L. Rev. 1439, 1446 (1968)); see also Dixon v. Ala. State Bd. of Educ., 294 F.2d 150, 156 (5th Cir. 1961) (providing that it "remains

true that the State cannot condition the granting of even a privilege upon the renunciation of the constitutional right to procedural due process."); Richard A. Epstein, <u>Unconstitutional Conditions, State Power, and the Limits of Consent</u>, 102 Harv. L. Rev. 4, 7 (1988) ("[T]he doctrine prevents the government from asking the individual to surrender by agreement rights that the government could not take by direct action. Thus, although a state may absolutely forbid foreign corporations from doing business within its borders, it cannot allow them in on condition that they waive their right to federal diversity jurisdiction, any more than it could divest them of this right by statute."). In this case, the Pa. Statutory Scheme violates the unconstitutional conditions doctrine because it conditions the benefit of doing business in the state with the surrender of constitutional due process protections.

Second, out-of-state corporations seeking to exercise their right to engage in commerce in Pennsylvania have only two unsatisfactory choices: (1) register and therefore consent to general personal jurisdiction in all cases; or (2) not register and be denied the opportunity to "do business" in the state. Given the fundamental importance of the ability to engage in interstate commerce, this Court concludes that the mandatory nature of the statutory consent extracted by the Pa. Statutory Scheme is, in fact, functionally involuntary. As a result, it is

not true consent at all. See Montestier, supra at 1389-90

(opining that "[t]he notion of consent implies that a party has

alternatives – in particular, the alternative not to consent"

but that "[t]he option of refraining from doing business in [a]

state is not really a viable one for most corporations"); see

also Leonard v. USA Petroleum Corp., 829 F. Supp. 882, 889 (S.D.

Tex. 1993) ("Due process is central to consent; it is not waived

lightly. A waiver through consent must be willful, thoughtful,

and fair. 'Extorted actual consent' and 'equally unwilling

implied consent' are not the stuff of due process.").

Finally, as noted by Professor Monestier, consent by

registration is significantly dissimilar to other forms of

accepted consent-based personal jurisdiction such as forum

selection clauses and submission – consent based on appearing

and defending in a lawsuit. Monestier, supra at 1380-84. These

forms of consent are creatures of contract – transactional in

nature – and the consents are limited to the parties to the

transaction or discrete disputes. By contrast, this form of

anticipatory consent, such as that contemplated by the Pa.

Statutory Scheme, subjects the foreign corporation to unlimited

general jurisdiction for all times and in all unforeseen

circumstances.

For all of these reasons, the Pa. Statutory Scheme

allows Pennsylvania to impermissibly extract consent at a cost

of the surrender of a constitutional right. Absent voluntary consent, Daimler teaches that a corporation is only subject to general jurisdiction where it is "at home." The Pa. Statutory Scheme impermissibly re-opens the door to nation-wide general jurisdiction that Daimler firmly closed. Therefore, the Court concludes that the Pa. Statutory Scheme violates the Due Process Clause and is unconstitutional.

> **D.    The Continuing Validity of Bane after Daimler**

The Court turns to the validity of pre-Daimler Third Circuit precedent approving of the Pa. Statutory Scheme. In Bane, the Third Circuit held that a foreign corporation consents to general jurisdiction when it registers to do business in Pennsylvania under the Pa. Statutory Scheme. 925 F.2d at 640.

Bane was issued well before the Supreme Court clarified the limits of general jurisdiction in Daimler. Bane was based on the then-understanding that "due process is . . . not offended by the assertion of jurisdiction when the defendant has maintained continuous and substantial forum affiliations, whether or not the cause of action is related to those affiliations." Id. at 639. Further, Bane explained that "[b]y registering to do business in Pennsylvania, Netlink 'purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" Id. at 640 (internal quotation

marks omitted) (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985)). In Daimler, the Supreme Court clarified that neither maintaining continuous and substantial contacts with the forum nor notions of "purposeful availment" were a sufficient basis for the exercise of general jurisdiction over a foreign corporation. Thus, Daimler effectively disassembled the legal scaffolding upon which Bane was based. Daimler, 571 U.S. at 138.[11]

It is thus apparent that the constitutional regime under which Bane was decided has been superseded by a newer standard.[12] Under these circumstances, can Bane survive the rule

---

[11] Moreover, in support of its alternative holding that the defendant had consented to general jurisdiction through registration, the Third Circuit in Bane cited Hess v. Pawloski, 274 U.S. 352 (1927) and Dehne v. Hillman Inv. Co., 110 F.2d 456 (3d Cir. 1940). See Bane, 925 F.2d at 641. The exercise of jurisdiction in both of these cases was premised on in-state conduct, which makes Bane's analysis more appropriate to our modern notion of specific jurisdiction than general jurisdiction. Hess, 274 U.S. at 356; Dehne, 110 F.2d at 457.

[12] Several district courts within this circuit have followed Bane even after Daimler, and have held that a defendant's compelled consent to jurisdiction is not nullified by Daimler's limitations on general personal jurisdiction – especially in light of the fact that the Pa. Statutory Scheme explicitly informs the entity that it will be subject to general jurisdiction once it registers to do business. See Gorton v. Air & Liquid Sys. Corp., 303 F. Supp. 3d 278, 296–97 (M.D. Pa. 2018) (recognizing that after "Daimler, a majority of federal courts have held that general jurisdiction may not be based solely upon a corporation's compliance with a state's registration statute," but concluding that because Section 5301 has specific language regarding jurisdiction, the consent is valid); Bors v. Johnson & Johnson, 208 F. Supp. 3d 648, 653 (E.D. Pa. 2016) ("The ruling

24

of _Daimler_?

The district court is the lowest court in our federal hierarchical system and is bound by rulings of its circuit court and the Supreme Court. See _Allegheny Gen. Hosp. v. N.L.R.B._, 608 F.2d 965, 970 (3d Cir. 1979) ("[P]recedents set by the higher courts . . . are conclusive on the lower courts, and leave to

---

in _Daimler_ does not eliminate consent to general personal jurisdiction over a corporation registered to do business in Pennsylvania."); see also _Youse v. Johnson & Johnson_, 18-cv-3578, 2019 WL 233884, at *3-*4 (E.D. Pa. Jan. 16, 2019); _Allstate Ins. Co. v. Electrolux Home Prods._, 18-cv-00699, 2018 WL 3707377, at *4-5 (E.D. Pa. Aug. 3, 2018); _Mendoza v. Electrolux Home Prods., Inc._, 15-cv-00371, 2018 WL 3973184, at *3-*4 (M.D. Pa. Aug. 20, 2018); _Plumbers' Local Union No. 690 Health Plan v. Apotex Corp._, 16-cv-665, 2017 WL 3129147, at *11 (E.D. Pa. July 24, 2017); _Hegna v. Smitty's Supply, Inc._, 16-cv-3613, 2017 WL 2563231, at *3-*4 (E.D. Pa. June 13, 2017).

However, as discussed, while the explicit Pa. Statutory Scheme may indicate that consent to jurisdiction is knowing, it does not make it voluntary. Thus, this Court departs from these holdings as the consent extracted is invalid. Contrary to these courts' view, the issue was never whether _Daimler_ invalidated consent to personal jurisdiction, but whether a scheme that forces consent can be found valid after _Daimler_.

The Pennsylvania Superior court has also followed this line of district court cases in reaching the same conclusion. _Webb-Benjamin, LLC v. Int'l Rug Grp., LLC_, 192 A.3d 1133, 1139 (Pa. Super. Ct. 2018) ("[W]e conclude that _Daimler_ does not eliminate consent as a method of obtaining personal jurisdiction. Accordingly, pursuant to 42 Pa.C.S.A. § 5301, Pennsylvania may exercise general personal jurisdiction over" registered foreign corporations). As far as this Court is aware, regarding the Pa. Statutory Scheme specifically, only one Court of Common Pleas judge has concluded that the scheme violates the Due Process clause. _Mallory v Norfolk S. Ry. Co._, No. 1961, 2018 WL 3025283 (Pa. Com. Pl. May 30, 2018). This Court finds _Mallory_ well-reasoned.

the latter no scope for independent judgment or discretion."
(quoting H.C. Black, Law of Judicial Precedents 10 (1912))),
overruled on other grounds by St. Margaret Mem'l Hosp. v.
N.L.R.B., 991 F.2d 1146 (3d Cir. 1993). Under ordinary
circumstances, Bane would be binding on this Court.

However, the Third Circuit itself has recognized an
exception to this rule. When a constitutional standard is
replaced by newer Supreme Court law contrary to the law of the
circuit, "the old standard [is] not binding" on lower courts.
Planned Parenthood of Se. Pa. v. Casey, 947 F.2d 682, 697-98 (3d
Cir. 1991), aff'd in part, rev'd in part, 505 U.S. 833 (1992).
Thus, "a change in the legal test or standard governing a
particular area is a change binding on lower courts that makes
results reached under a repudiated legal standard no longer
binding." Id. at 698; see also Sheet Metal Workers Int'l Ass'n,
Local Union No. 19 v. U.S. Dep't of Veterans Affairs, 135 F.3d
891, 902 (3d Cir. 1998) (recognizing that "intervening
authority" may require a court to "reevaluate a precedent"
(internal quotation marks omitted) (citing Reich v. D.M. Sabia
Co., 90 F.3d 854, 858 (3d Cir. 1996) and Casey, 947 F.2d at
698)).

In Casey, the Third Circuit (and later the Supreme
Court) considered the constitutionality of various sections of
the Pennsylvania Abortion Control Act of 1982. 947 F.2d at 687.

The Third Circuit concluded that, through splintered opinions, the Supreme Court had formulated a new standard of review in the context of abortion rights and that that new standard supplanted previous Supreme Court precedent directly on point, even though the Supreme Court had not explicitly overruled that precedent. Id. at 697-98. The Third Circuit explained that lower courts are bound by both the legal standard or reasoning of precedential opinions as well as the specific results reached under that standard. Id. at 691-92. Under these circumstances, the Third Circuit concluded that "[i]t would be anomalous if the results reached under a constitutional standard remained binding after the standard or test was repudiated." Id. at 697.

The rule that emerges from Daimler changed the standard for determining when a state may exercise general personal jurisdiction over a foreign corporation. Therefore, applying Casey to the facts of this case, the result obtained under Bane (general personal jurisdiction over a foreign corporation by statutory consent) cannot stand under the new constitutional standard adopted in Daimler (general personal jurisdiction only where the foreign corporation is at home). Thus, this Court is bound to apply the new Daimler standard not withstanding previous circuit law.

IV. **CONCLUSION**

The Court concludes that the Pa. Statutory Scheme

requiring foreign corporations to register to do business and, therefore, to consent to general personal jurisdiction in Pennsylvania, offends the Due Process Clause and is unconstitutional. As a result, the Court further concludes that the Third Circuit's pre-Daimler decision in Bane, finding that, by registering to do business in Pennsylvania, a foreign corporation consents to general personal jurisdiction, is irretrievably irreconcilable with the teachings of Daimler, and can no longer stand. Under the facts of this case, without the presence of: (1) specific jurisdiction; (2) HIC's voluntary consent; (3) HIC being incorporated in or having its principal place of business in Pennsylvania; or (4) some other extraordinary circumstance, this Court has no personal jurisdiction over HIC. Therefore, the Court grants HIC's motion to dismiss.

An appropriate order follows.