IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: ASBESTOS PRODUCTS LIABILITY LITIGATION (No. VI) | : : : : | Consolidated Under MDL DOCKET NO. 875 |
| JACKIE L. SULLIVAN, Executrix of the Estate of JOHN L. SULLIVAN, Deceased, and widow in her own right | : : : : : | |
| Plaintiff, | : : | |
| v. | : : | E.D. PA CIVIL ACTION NO. 18-cv-3622 |
| A.W. CHESTERTON COMPANY, et al. | : : : | |
| Defendants. | : : | |

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                                              November 4, 2021

       Presently before the Court is the motion for summary judgment filed by Defendant Viad Corporation ("Viad") regarding Plaintiff's claims arising out of John L. Sullivan's alleged occupational asbestos exposure. For the following reasons, the Court will grant the motion.

**I.    BACKGROUND**

       Plaintiff Jackie L. Sullivan, as executrix for the estate of John L. Sullivan and as a widow in her own right,

alleged that Mr. Sullivan was exposed to asbestos-containing products produced by the Griscom Russell Company, Viad's alleged predecessor, and filed this action against Viad.

Mr. Sullivan passed away on December 23, 2016. The Plaintiff alleges that his death was caused by exposure to products for which Viad is responsible while aboard the USS Charles F. Adams, the USS Saratoga, and the USS Lexington.

John L. Sullivan served in the United States Navy from approximately 1967 until 1980. During that time, he accrued a total of seven years and eight months at sea, serving on six different ships. Mr. Sullivan served aboard the USS Lexington from 1970 to 1972, aboard the USS Saratoga from 1975 to 1976, and aboard the USS Charles F. Adams from 1977 until 1980. Mr. Sullivan was found unfit for duty by a medical board on October 16, 1979, and on January 10, 1980, he was found ineligible for reenlistment because of a physical disqualification.

## II.  LEGAL STANDARDS

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence might affect the outcome of the litigation, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a

verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. at 242 (1986); see Scott v. Harris, 550 U.S. 372, 380 (2007). The mere existence of some disputed facts will not overcome a motion for summary judgment. Am. Eagle Outfitters v. Lyle & Scott Ltd., 584 F.3d 575, 581 (3d Cir. 2009) (quoting Anderson, 477 U.S. at 247-48). In undertaking this analysis, the Court must view all facts in the light most favorable to the non-moving party. Scott, 550 U.S. at 380.

While the moving party bears the initial burden of showing the absence of a genuine dispute of material fact, meeting this obligation shifts the burden to the non-moving party who must "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 250. Inferences based on speculation or conjecture do not create material fact disputes. Keating v. Pittston City, 643 Fed. Appx. 219, 222 (3d Cir. 2016) (quoting Halsey v. Pfeiffer, 750 F.3d 273, 287 (3d Cir. 2014)).

## III. DISCUSSION

Defendant Viad moves for summary judgment on two grounds. First, Viad argues that Plaintiff has failed to establish that an asbestos-containing product for which Viad is allegedly responsible was the cause of Mr. Sullivan's injuries. Second, Viad argues that it is not liable as a successor to the

3

Griscom Russell Company, the company that manufactured the products at issue.

Under maritime law, a plaintiff must show "(1) that the plaintiff was exposed to the defendant's product and (2) that the product was a substantial factor in causing the plaintiff's injury." Conner v. Alfa Laval, Inc., 842 F. Supp. 2d 791, 797 (E.D. Pa. 2012). To do so, a plaintiff can rely on direct evidence or circumstantial evidence that will support a reasonable inference that the defendant's product was a substantial factor in causing the plaintiff's injury. Damon v. Aireon Mfg. Corp., No. CV 2:14-01954-ER, 2015 WL 9482256 at *1 fn.1 (E.D. Pa. Dec. 22, 2014).

### A. Plaintiff Failed to Show that Defendant's Products Contained Asbestos.

To prove that exposure to a defendant's product is the cause of the alleged injuries, a plaintiff must show that the product contained asbestos. See, e.g., Brown, et al. v. Kaiser Gypsum Co., Inc., et al., No. 2:11-CV-60063, 2011 WL 6445091 at *1 fn.1 (E.D. Pa. Dec. 12, 2011); Prange, et al. v. Alfa Laval, Inc., et al., No. 09-06698, 2011 WL 4912833 at *1 fn.1 (E.D. Pa. July 22, 2011). Here, Plaintiff has failed to create a genuine dispute as to the material fact of the presence of asbestos in or on Griscom Russell products.

Plaintiff points to several documents to support a conclusion that Griscom Russell products were present on ships aboard which Mr. Sullivan served. The machinery and hull data for the USS Charles F. Adams, USS Lexington, and USS Saratoga state that Griscom Russell manufactured distilling plants that were aboard those ships. Additionally, Plaintiff relies on an operation manual for the USS Saratoga to show the presence of a Griscom Russell lubricating oil cooler.

However, Plaintiff offers no evidence that a Griscom Russell product contained asbestos. Plaintiff asserts that it "was standard for the Griscom Russell distillers to contain asbestos." Pl. Mem. Opp. Summ. J. 2 (ECF No. 352 at 2). But the evidence offered in support of this proposition is an operating manual for a different type of distiller installed on DD666 Class Destroyers. Id., Ex. D (ECF No. 352-4). Not only is the document dated decades prior to Plaintiff's Naval service, it is for an entirely different class of ship. It offers no insight into the distillers present on the USS Charles F. Adams, USS Lexington, or USS Saratoga.

The evidence offered to show the lube oil coolers contained asbestos is even more remote. There, Plaintiff simply asserts "high temperature uses" require asbestos, citing a 1930 report for the Canadian Institute of Occupational and Environmental Health. Id. at 3 (ECF No. 352 at 3), Ex. I (ECF

5

No. 352-9). Plaintiff also points to details of a General Electric oil cooler, and, reasoning by analogy, asserts that it is "highly unlikely" that Griscom Russell's oil coolers would lack asbestos if GE's contained it. Id. at 3 (ECF No. 352 at 3), Ex. R (ECF No. 352-18). Again, this evidence says nothing about whether the specific Griscom Russell products on the USS Lexington and USS Saratoga contained asbestos.

Plaintiff also provided an expert affidavit from Arthur W. Faherty. Id., Ex. P (ECF No. 352-16). But while Mr. Faherty states that asbestos was present on Navy ships of that era generally, he does not identify any particular piece of equipment as having asbestos. See Id., Ex. P. at ¶¶18, 20-24 (ECF No. 352-16 at 3-4)(noting that "steam vessels of this era typically used asbestos," and that deposed shipmates testified that "certain machinery" contained asbestos (emphasis added)). The affidavit says nothing about the Griscom Russell distillers and lube oil coolers at issue.

Finally, Plaintiff included deposition testimony by Mr. Charles Sawyer and Mr. Ricky Ykema, who served with Mr. Sullivan aboard the USS Charles F. Adams and USS Saratoga respectively. Mr. Sawyer testified in his deposition that the distiller on the USS Charles F. Adams was insulated. Id., Ex. B. at 64:2-4 (ECF No. 352-2 at 4). Mr. Ykema, similarly, testified that the lube oil cooler was "[u]sually" insulated. Id., Ex. G

6

at 94:20-95:5 (ECF No. 352-7 at 3). Neither Mr. Sawyer nor Mr. Ykema, however, testified that this insulation contained asbestos.

Walker v. Viad Corp., cited by the Plaintiff, offers a useful contrast. No. 16-215, 2019 WL 653216 (E.D. Pa. Feb. 14, 2019). There, the plaintiff relied on testimony by his former supervisor that not only was the product at issue insulated, but that "he now knows that the insulation contained asbestos." Id. at *11. Here, Plaintiff offers no such evidence that could create a genuine dispute as to the presence of asbestos in or on the relevant Griscom Russell products.

**B.   Plaintiff Failed to Show Substantial Exposure to Defendant's Products.**

Even if there was a genuine dispute as to the presence of asbestos in or on Defendant's products, Plaintiff has failed to demonstrate Mr. Sullivan's substantial exposure to a product attributable to the Defendant.

To state a claim under maritime law, a plaintiff must show that such exposure was a "substantial factor" in causing the plaintiff's injury. Conner, 842 F. Supp. 2d at 797. Minimal exposure is insufficient, and a plaintiff must show substantial exposure over a substantial period of time. Lindstrom v. A-C Product Liability Trust, et al. 424 F.3d 488, 492 (6th Cir.

2005). A "mere showing that defendant's product was present somewhere at plaintiff's place of work is insufficient." Id.

The depositions of Mr. Sullivan's shipmates on the USS Charles F. Adams and the USS Saratoga are the only pieces of evidence offered that can place Mr. Sullivan near alleged Griscom Russell products.

Mr. Sawyer served alongside Mr. Sullivan on the USS Charles F. Adams, which is alleged to have had a Griscom-Russell distiller onboard. In his deposition, Mr. Sawyer was asked if the distiller on the USS Charles F. Adams "was maintained or repaired." Pl. Mem. Opp. Summ. J., Ex. B. 64:15–16 (ECF No. 352-2 at 4). He responded that "we did occasional maintenance," but "that whole system was usually pretty reliable." Id. at 64:19–20, 65:3–4 (ECF No. 352-2 at 4–5). When discussing valve repair, Sawyer was asked how often they were repaired "during Jack's time". Id. at 85:11–12 (ECF No. 352-2 at 10). Sawyer responded that the repairs were "[p]robably pretty rare." Id. at 85:15. Finally, when asked if the "insulation on the distiller" was disturbed, Sawyer responded "No, not – not the whole time I was on there." Id. at 219:7–10 (ECF No. 352-2 at 27).

Mr. Ykema served alongside Mr. Sullivan on the USS Saratoga, which is alleged to have had both a Griscom-Russell distiller and lube oil coolers. Mr. Ykema only testified about a distiller on the USS Saratoga in a brief exchange. See Pl. Mem.

8

Opp. Summ. J. Ex. G at 95–96 (ECF No. 352-7 at 3). He was asked "[w]hat is a low-pressure three effect distilling plant," and he responded that it's "for taking saltwater and turning it into drinking water." Id. In the parts of the deposition included with the motion and response, Mr. Ykema does not discuss what work, if any, was performed on the distiller or who performed the work. See Id.

As for the lube oil coolers, Mr. Ykema was asked "[d]id John maintain this particular product," and he responded "Uh-huh." Id. at 95. When Mr. Ykema was asked if he ever worked on the lube oil coolers, he responded "All the time." Id. at 196 (ECF No. 352-7 at 4). However, Mr. Ykema clarified that there was a "lube oil cooler for every piece of equipment," and that "in a machinery space . . . there could have been a dozen lube oil coolers, and they would vary in size from fairly small . . . up to very large." Id. at 196–97. Given that there were "dozens" of coolers, it is not clear whether the coolers being serviced were manufactured by Griscom Russell. And while Mr. Ykema's testimony could establish that Mr. Sullivan maintained lube oil coolers, it does not establish that Mr. Sullivan performed work on Griscom Russell coolers that resulted in substantial exposure to asbestos.

### C. Plaintiff Failed to Show that Defendant Viad Can Be Held Liable as a Successor to Griscom Russell.

In addition to denying that Griscom Russell products caused Mr. Sullivan's injuries, Viad argues that it is not liable as a successor-in-interest to Griscom Russell.

According to Viad—and Plaintiff does not appear to dispute its recounting of events—Griscom Russell was a subsidiary of Hamilton-Thomas. In 1962, Baldwin-Lima-Hamilton, a Pennsylvania corporation, purchased 93.4% of Hamilton-Thomas's stock. In April of that year, Griscom Russell was dissolved and its plant and equipment sold. In 1965, Baldwin-Lima-Hamilton merged with Armour and Company, a Delaware corporation. The surviving company of the merger was Armour and Company, and Baldwin-Lima-Hamilton's assets and liabilities passed through to a wholly-owned subsidiary of the same name, though incorporated in Delaware. In 1972, Baldwin-Lima-Hamilton was renamed BLH, Inc., and in 1975 it was dissolved.

Under both Pennsylvania and Delaware law, the general rule provides that purchasing a company's assets does not make the purchasing company liable for the selling company's debts or obligations. Philadelphia Elec. Co. v. Hercules, Inc., 762 F.2d 303, 308-09 (3d Cir. 1985); Srinivasan Rajamani v. Revways Corp., 2019 WL 169316 at *1 (Del. Super. Ct. 2019).

10

This general rule, however, is subject to the same four exceptions in both states. These exceptions are: "where (1) the purchaser of assets expressly or impliedly agrees to assume obligations of the transferor; (2) the transaction amounts to a consolidation or de facto merger; (3) the purchasing corporation is merely a continuation of the transferor corporation; or (4) the transaction is fraudulently entered into to escape liability, a successor corporation may be held responsible for the debts and liabilities of its predecessor." Philadelphia Elec. Co., 762 F.2d at 308–09; see also Srinivasan, 2019 WL 169316 at *1.

At the summary judgment stage, if the non-movant bears the burden of proof at trial, the moving party can meet its initial burden by showing that the non-movant has "failed to make a sufficient showing on an essential element" of their case. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). If the moving party makes this showing, the burden shifts "to the nonmovant who must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations, speculations, unsupported assertions or denials of its pleadings." Conboy v. United States SBA, 992 F.3d 153, 160 (3d Cir. 2021) (emphasis added).

Here, there are two relevant transactions: (1) the 1962 purchase of Hamilton-Thomas's stock by Baldwin-Lima-

11

Hamilton; and (2) the 1965 merger of Baldwin-Lima-Hamilton with Armour and Company. For Viad to be liable for Griscom Russell's conduct, presumably both transactions must escape the general rule of non-liability by meeting one of the four exceptions.

Noting that Plaintiff bears the burden of demonstrating successor liability, Defendant Viad argues that beyond conclusory statements in the complaint, Plaintiff offers no evidence that could establish that Viad can be held liable as a successor to Griscom Russell.

In response, Plaintiff does not offer any facts to support a finding of successor liability. Rather, Plaintiff merely asserts that in Walker v. Viad, 2019 WL 653216 (E.D. Pa. Feb. 14, 2019), Viad's motion for summary judgment on successor liability was denied and that "[it] is respectfully submitted the same result should apply here." Pl. Mem. Opp. Summ. J. 3–4 (ECF No. 352 at 3–4). Plaintiff also argues that Viad "was held liable for Baldwin Lima Hamilton . . . in Arthur Kay," and that "the analysis in those cases is adopted by reference." Id. at 4.

But as Defendant points out in their reply, the cases cited by Plaintiff do little to support a finding of successor liability. In Walker, the court did not even address Viad's successor liability argument for procedural reasons. 2019 WL 653216 at *13–15. As for Arthur Kay, Plaintiff provides only a Memorandum in Opposition to Summary Judgment filed in Kay et al.

12

v. 84 Lumber et al., No. 091202712 (Phila. Ct. Comm. Pl. 2010). That memo, without full citations or case names, argues that Viad's purported admission of liability for Griscom Russell's conduct in "Kurns" and "Wood" precludes summary judgment on the issue. But in William Wood v. Burlington N. R.R. Co., et al., Civil Action No. 952-00230 (St. Louis Cir. Ct.), Viad's stipulation was "for the purpose of this cause." Def. Rep. Br. Opp. Summ. J. Ex. B (ECF No. 372 at 24-25). And in Kurns v. A.W. Chesterton, while the plaintiff argued Viad was liable as a successor to Baldwin Locomotive, the court's decision was based on federal preemption. 2009 WL 249769 (E.D. Pa. Feb. 3, 2009).

The only evidence that Plaintiff offers in support of a finding of successor liability is Exhibit Q, which contains assorted documents from other cases. Pl. Mem. Opp. Summ. J. Ex. Q (ECF No. 352-17). Among these are a Motion for Determination of Corporate Successorship as a Matter of Law in Trujillo v. Atchison, Topkea and Santa Fe Ry. Co., No. VA-129-CV (N.M. 13th Jud. Dist. Valencia Cnty. 1997), as well as documents related to the merger of Baldwin Locomotive Works and Lima-Hamilton submitted with that motion. Id.

At most, however, these documents could possibly—if credited—establish that the liabilities of Baldwin-Lima-Hamilton passed to Armour and company. Plaintiff offers no facts that could establish that Baldwin-Lima-Hamilton acquired the

13

liabilities of Griscom Russel through the purchase of Hamilton-Thomas stock.

Accordingly, Plaintiff has failed to make specific factual allegations which could create a genuine dispute as to a material fact.

## IV. CONCLUSION

Because Plaintiff has failed to show both that Defendant's products were the cause of Mr. Sullivan's harm or that Viad can properly be held liable as a successor-in-interest to Griscom Russell, Viad is entitled to summary judgment.

An appropriate order follows.